**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles DI CANIO, Defendant-Appellant.**

**No. 373, Docket 24548.**

United States Court of Appeals Second Circuit.

Argued June 4, 1957.

Decided July 1, 1957.

714

Leonard P. Moore, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y. (Cornelius W. Wickersham, Jr., Chief Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

·Charles DiCanio, pro se.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

On June 22, 1954, an armed robber, apparently working alone and without confederates, held up the branch bank of the Manufacturers Trust Company at 799 Blake Avenue, Brooklyn, New York. The bank was a member of the Federal Reserve System whose deposits were insured by the Federal Deposit Insurance Corporation. That the bank robbery took place was not disputed; the sole issue was whether Charles DiCanio was the robber. The jury found him guilty on both counts of an indictment charging bank robbery in violation of 18 U.S.C. § 2113(a) and putting the lives of persons in jeopardy by the use of a dangerous weapon in consummating the robbery, in violation of 18. U.S.C. § 2113(d). The trial judge imposed concurrent sentences of 18 years imprisonment, and DiCanio appeals.

Most of the grounds of appeal are so frivolous as not to require discussion. Appellant claims there was too much identification, that the witnesses repeatedly pointed him out as the robber, and were allowed to say they were positive he was the man; that the trial judge made matters worse by asking occasional pointed questions, which appellant tells us was done to an extent which overstepped the bounds of judicial propriety; that it was error for the trial judge to permit the prosecutor, during his summation, to hold his watch and note the lapse of 38 seconds, there having been testimony by the teller, Clara Egan, that appellant held a revolver pointed at her and she saw him for 38 seconds, while putting $3705 of the bank's money, at appellant's direction, into a canvas bag he had brought with him for the purpose; and that it was error not to permit the jury to inspect another courtroom, where a prior identification had taken place, to be sure of its exact dimensions. There is nothing in any of these contentions. We can find nothing in the conduct of the trial judge to warrant the criticisms aimed at him; and, while we can understand that, from appellant's point of view, the identification may have appeared repetitious and over-positive, the Government was clearly entitled to produce every witness who saw appellant at the time of the robbery. Another contention, strangely enough, is that the evidence is not sufficient to warrant a conviction, despite the clear and unequivocal identification of appellant and the testimony of Mrs. Egan that he held her up at the point of a pis-

tol and forced her to put the money in the bag and hand it to him.

There is one point, however, which we shall consider in some detail, as it is bound to arise occasionally and we think a clear and simple statement of the applicable law may be helpful.

The court stenographer who reported the trial died about five months later and before he had transcribed the minutes. There is no indication whatever that he was ill at the time of the trial; and the transcript was prepared and written out by another court reporter from the notes of the man who had died. The transcript now certified to us consists of 204 pages. On 32 of these pages there are slight omissions, marked by one or more asterisks, where the reporter who wrote out the transcript found the notes of his colleague not sufficiently legible. Appellant does not seek relief by way of a hearing to ascertain by inquiry of the trial judge and the lawyers what was said at the few places where the asterisks appear; indeed, appellant asserts no claim whatever as to what was said but not transcribed. What he does seek is a reversal of the judgment of conviction and a new trial, on the ground of the inadequacy of the record before us.

In practically every instance the purport of what was said is evident from the context, and all but a very few of the omissions constitute colloquy between counsel or between the court and counsel, and the record as a whole demonstrates to our satisfaction that the reconstruction of the missing portions of the transcript would be of little avail to appellant.

There is no rule of thumb to govern the action of this court on an appeal from a criminal conviction in those instances where the court stenographer who reported the trial has died and another reporter has prepared the transcript from stenographic notes. The absence of a completely accurate transcript does not, without more, invalidate a conviction. A new trial will be ordered only if necessary to the protection of a party's rights. Hence, the defects of the record must be of a prejudicial character, not merely inconsequential inaccuracies or omissions. Nor do we say any distinction is necessarily to be drawn between civil and criminal appeals. Each case must stand on its own bottom; and the outcome will depend upon the circumstances of the particular case. See Annotation, 19 A.L.R.2d 1098.

We have carefully examined the entire record in the case now before us and we are convinced that the omissions are trivial in character, and that appellant's claim of error because of an allegedly defective and inadequate transcript of the minutes of the trial must be rejected.

Most of the omissions are plainly mere colloquy, the sort of bickering between counsel that is often omitted entirely by experienced court reporters. Both the prosecutor and defense counsel were old hands at the game, and each was determined to nip in the bud any tendency on the part of the other to indulge in "comments," the sort of thing trial lawyers often call "preliminary summations." Each succeeded pretty well, and one of defense counsel's devices for the accomplishment of his purpose was a liberal sprinkling of motions for a mistrial whenever the prosecutor made any comment upon the evidence, or the prior testimony of a witness. None of this, we think, could have affected the outcome in the slightest degree.

There were three omissions of parts of questions, but the result was either a reframing of the question before any answer was given or answers that in the context appear to have no significance. In three other instances parts of answers are not transcribed. But nothing of importance is missing. For example, the only witness called by appellant, who also testified on behalf of the Government, was Joseph B. Healy, a New York City detective who went to the bank on June 22, 1954 and interviewed the witnesses who later identified appellant at the trial. As a result a sort of "composite description" of the robber was sent out over the police teletype system.

Healy testified on his direct examination for the defense that this teletype message described the robber as "dark complexioned." Counsel then framed an argumentative question tending to establish that if the witnesses at the bank had described the robber as "sallow" the witness would not have put "dark complexioned" in his written report. This led to bickering, and the following ensued:

"The Court: All right. Officer Healy, you not only had the description we are talking about, but his height and general appearance—

"The Witness: That is right.

"The Court: —I understood you to say, in your alarm?

"The Witness: Well, I * * *".

The "alarm" referred to is the teletype message. There was seemingly endless discussion about it and the text of the complete message was finally read into the record. Appellant plainly had the full benefit of the alleged discrepancy between Healy's testimony and the "composite description" in the teletype message.

Most of the 32 omissions are too insignificant to justify any extended discussion. For example a series of several of them are in a long colloquy between counsel about the Grand Jury Minutes and the result was that, over the prosecutor's objection, the Grand Jury Minutes were handed over to counsel for the defense.

What appellant characterizes as "perhaps the most important" relates to a missing portion of defense counsel's objection to a part of the court's instructions to the jury. But the instructions are intact, the portion of them that we are now told was so erroneous and prejudicial as to warrant a reversal is clearly identified, and there is nothing erroneous about it. No matter how defense counsel phrased his exception to this portion of the charge he could not transform a wholly proper instruction into a fatally defective one. The point, as is the case of appellant's other points, borders on the frivolous. We shall discuss it briefly as

appellant emphasizes it and thereby illuminates the nature of the other omissions.

Mrs. Egan, the teller at window No. 6 at the bank, had testified to all the details of the robbery, as above indicated. She said the robber wore no mask, that she had a clear view of his face and that he was appellant. Arthur Michaels, a guard at the bank, looked, after Mrs. Egan screamed, and saw appellant running or walking very fast toward the revolving door which led out of the bank to the street. He followed the robber, got "a good look at him," and he testified that appellant was the robber. Joseph O'Neill, a mechanic of the National Cash Register Company, was standing in the bank, waiting to do some work on one of the bank's cash register machines when he heard a scream, and said a man came from the direction of the teller's cage. As the man "broke into a run for the door" O'Neill went after him, and he testified that the man was DiCanio.

After clear and unexceptionable instructions to the effect that the jurors were the sole judges of the facts and of the credibility of the witnesses, and an instruction at the request of defense counsel, to the effect that no unfavorable inferences were to be drawn against appellant from "the fact that he did not testify in his own behalf," the trial judge made reference to the three identifying witnesses and told the jury they should consider this testimony, decide whether they were telling the truth, whether they were consistent one with another and whether there was any reasonable doubt in the minds of the jurors or any single one of them. Later he added:

"These witnesses have sworn to tell the truth. They have come here and each one has identified this defendant in open court."

This is the portion of the charge which is alleged to be erroneous. But we find otherwise. As a comment this was exceedingly mild under the circumstances. The trial judge, had he chosen to do so, might have expressed himself in much more vigorous terms

without in the slightest degree over-stepping the bounds of the rule that preserves to trial judges in the federal system the common law right to comment on the evidence. Bute v. Illinois, 333 U.S. 640; 650 note 4, 68 S.Ct. 763, 92 L.Ed. 986; Querica v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; United States v. Bloom, 2 Cir., 237 F.2d 158, 163.

But, as the conviction under 18 U.S.C. Section 2113(a) became merged in the aggravated offense described in 18 U.S.C. Section 2113(d), the sentence under the former must be set aside. Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370; United States v. Tarricone, 2 Cir., 242 F.2d 555; cf. United States v. Donovan, 2 Cir., 242 F. 2d 61.

Conviction affirmed; sentence under Count One vacated.