JOHN M. WALKER, Jr., Chief Judge.
 

 Plaintiff-appellant Charles Loudon appeals from a sixty-three-month sentence he received following his conviction in the United States District Court for the District of Vermont (William K. Sessions III,
 
 Chief
 
 Judge) for contempt of court, false statement, and wire fraud. Loudon argues that the district court erred by (1) imposing an eight-level sentence enhancement pursuant to § 2J1.2(b) of the United States Sentencing Guidelines (“U.S.S.G.” or “Guidelines”) and (2) granting the Government’s motion for an upward departure in Criminal History Category pursuant to U.S.S.G. § 4A1.3. Reviewing the district court’s factual findings for clear error and its application of the Guidelines to the facts
 
 de novo, see United States v. Kostakis,
 
 364 F.3d 45, 51 (2d Cir.2004), we affirm.
 

 The information presented to the district court, construed in the light most favorable to the Government, shows the following. Charles Loudon has lived a double life since the late 1960s, when he procured a birth certificate and social security number under the alias Lannell Reed Emmer-son. During the 1990s, Loudon used his own name to obtain credit, file for bankruptcy in Massachusetts, receive social security benefits, secure an Irish passport, apply for a Vermont driver’s license, and register vehicles. Over much of the same period, Loudon used the Emmerson alias to procure credit, file for bankruptcy in Vermont, receive supplemental social security benefits, apply for a Vermont driver’s license, and buy houses in Arizona and Ireland.
 

 In 1999, law enforcement discovered Loudon’s two identities. In December of that year, the United States Attorney charged Loudon with one count of social security fraud, relating to his receipt of social security benefits under the Emmer-son alias, and one count of bankruptcy fraud, relating to his bankruptcy filings under the Emmerson alias. The indictment was superseded by a two-count information alleging the same conduct, to which Loudon pled guilty in March 2000.
 

 In August 2000, the district court sentenced Loudon to time served (which amounted to approximately eight months’ imprisonment), three years of supervised release, and $150,867 in restitution. The court conditioned Loudon’s supervised release on the sale of both his house in Ireland and his travel trailer, with the proceeds to be applied toward his restitution obligations. Loudon’s appeal of this condition proved unsuccessful,
 
 see United States v. Loudon,
 
 No. 00-1581, 2 Fed.Appx. 131 (2d Cir. Jan.23, 2001) (unpublished disposition), and his petition for cer-tiorari to the United States Supreme Court fared no better,
 
 see Loudon v. United States,
 
 536 U.S. 910, 122 S.Ct. 2370, 153 L.Ed.2d 190 (2002).
 

 Loudon’s period of supervised release began immediately following his August 2000 sentencing, under the watch of Probation Officer Daniel Mangan. Approximately seven months later, Officer Mangan petitioned to revoke Loudon’s supervised release on the basis that Loudon had failed to apply the proceeds from the sale of his travel trailer to his restitution debt and had refused to sell his house in Ireland. On March 27, 2001, Officer Mangan filed an amended petition in which he asserted that Lou-don had applied for credit cards without the probation office’s approval. Loudon
 
 *798
 
 met with his attorney and the probation office in May 2001 to discuss these charges. Then, on July 10, 2001, Officer Mangan filed a third amended petition charging that Loudon had submitted false information to the probation office about his income and was trying to obtain an Irish passport.
 

 On July 11, 2001, Officer Mangan attempted to visit Loudon at his home, but no one answered the door. That same day, Loudon left the following message on Officer Mangan’s answering machine:
 

 You knocked very lightly on my door three times. By the time I got there, you were pulling wheelies out of my fucking driveway. Probably a good idea that you did ‘cause right now I’m not sure what I would have done if I had been put face-to-face with you. You bastard.’
 

 After he left the message, Loudon appeared at the emergency room of a local hospital and told the staff there that he was thinking about killing people involved in his criminal case, including his probation officer and the district judge. The hospital kept Loudon overnight but discharged him the next day. The following day, on July 13, 2001, Loudon was arrested on the petition for violation of supervised release and detained. In light of his statements expressing a desire to kill the district judge, his case was reassigned to a different judge.
 

 On September 17, 2001, Loudon admitted to four violations of the conditions of his supervised release and stated that he would not comply with the condition that he sell his house in Ireland. The district court revoked the term of supervised release and sentenced Loudon to nine months in prison.
 

 After the revocation of supervised release the probation office learned that, from at least the spring of 2001, Loudon had been (1) applying for credit cards using the Emmerson alias, and (2) secretly withdrawing equity from his house in Ireland by securing a mortgage in his own name and “buying” the property from its putative owner, Emmerson. The real estate transaction, the probation office discovered, had netted Loudon approximately $36,000 — a sum that Loudon had arranged to have wired, on April 5, 2001, to an account he had secretly opened in Vermont in December 2000. Loudon had withdrawn all of the money on the following day, in the form of six cashier’s checks payable to himself. These funds were never disclosed to the probation office. Nor were they disclosed in Loudon’s September 2001 application to proceed
 
 in forma pauperis
 
 before the United States Supreme Court on his petition for certiorari. Loudon also lied to the probation office about the provenance of $6,074 he had spent in May 2001; he said the money had come from “accounting/taxation contributions received, gifts and other miscellaneous sources,” when in fact it had come from the mortgage and “sale” of the house in Ireland.
 

 On June 20, 2002, six months after having returned an initial indictment, a federal grand jury in the District of Vermont returned a six-count superseding indictment charging Loudon with criminal contempt of court, in violation of 18 U.S.C. § 401, making false statements to the probation office, in violation of 18 U.S.C. § 1001(a), and wire fraud (relating to the credit card applications in the Emmerson name), in violation of 18 U.S.C. § 1343. Loudon pled guilty to the contempt charge, two of the four false statement charges, and the wire fraud charge.
 

 The district court sentenced Loudon to sixty-three months’ imprisonment. In calculating the sentence, the court: (1) applied an eight-level enhancement for “threatening to cause physical injury ...
 
 *799
 
 in order to obstruct the administration of justice,” U.S.S.G. § 2J1.2(b)(l), based on,
 
 inter alia,
 
 the phone message Loudon had left with Officer Mangan; and (2) granted the Government’s motion to increase Lou-don’s Criminal History Category from Category III to Category IV because Category III “substantially under-represent[ed]” the seriousness of his criminal history and his likelihood of recidivism, under U.S.S.G. § 4A1.3. Loudon appeals his sentence, arguing that both the application of the threat enhancement and the increase in criminal history category were unwarranted.
 

 We find no error in the district court’s determinations. First, the threat enhancement under U.S.S.G. § 2J1.2(b)(l) was amply justified by the phone message that Loudon left on Mangan’s answering machine. Section 2J1.2(b)(1) provides for an eight-level increase in offense level “[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice.”
 

 Loudon told Officer Mangan it had been a
 
 “good idea” not to
 
 linger
 
 too long
 
 at Loudon’s home “ ‘cause right now I’m not sure what I would have done if I had been put face-to-face with you. You bastard.” Although the message made no explicit reference to future acts, it nonetheless qualified as an implied threat; the district court reasonably inferred that the words were intended to discourage Officer Man-gan from fulfilling his duties as an officer of the court by visiting Loudon again.
 
 See United States v. Shoulberg,
 
 895 F.2d 882, 885 (2d Cir.1990) (“The sentencing court remains the finder of fact and may draw all reasonable inferences from the words used and from the pertinent circumstances.”).
 

 Second, the district court was well within its discretion to increase Loudon’s Criminal History Category from III to IV based on its finding that Category III under-represented Loudon’s criminal history.
 
 See
 
 U.S.S.G. § 4A1.3(a)(l). Section 4A1.3(a)(1) provides: “If reliable information indicates that the defendant’s criminal history category substantially under-represents ■ the seriousness of the defendant’s criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.”
 

 The court properly concluded that, absent an upward departure, the Guidelines would have failed to account for a significant part of Loudon’s criminal history. Under normal circumstances, the eight-month sentence imposed in August 2000 in connection with Loudon’s March 2000 convictions would have been counted as a “prior sentence” under the Guidelines, and would have boosted Loudon’s Criminal History Category from III to IV. A “prior sentence” is defined, in U.S.S.G. § 4A1.2(a)(l), as “any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.” The August 2000 sentence, standing alone, did not result from conduct that was “part of the instant offense[s]” (i.e., contempt, false statement, and wire fraud); it stemmed from unrelated bankruptcy and social security frauds.
 

 But Loudon’s violation of the terms of his supervised release, following imposition of the August 2000 sentence, caused the August 2000 sentence to be treated as if it had been for conduct that was “part of the instant offense[s].” The September 2001 violation involved some of the same conduct
 
 (e.g.,
 
 the refusal to sell the home in Ireland) that led to Loudon’s subsequent convictions, in 2002, for contempt, wire fraud, and false statement. Under § 4A1.2(k) of the Guidelines, the prison sentence imposed as a result of that violation must be treated as part of the August 2000 sentence.
 
 See
 
 U.S.S.G. § 4A1.2(k)
 
 *800
 
 (“In the case of a prior revocation of ... supervised release, ... add the original term of imprisonment to any term of imprisonment imposed upon revocation.”). The effect of this treatment changes the analysis under U.S.S.G. § 4A1.2(a)(l): the resultant sentence, taken as a whole, now reflects conduct that is “part of the instant offense[s],” and cannot be used in calculating the Criminal History Category — even though only part of that sentence involves conduct that relates to the instant offenses.
 

 We conclude that this case presents precisely the sort of circumstances that warrant an upward departure under U.S.S.G. § 4A1.3(a). Section 4A1.2 of the Guidelines, which sets forth the general rules for calculating a defendant’s Criminal History Category, fails to account for the situation in which (1) the defendant’s prior conviction and its accompanying sentence resulted from conduct unrelated to the present offense, but (2) the defendant received a further sentence, stemming from the indictment that led to the prior conviction, for violating the terms of the supervised release imposed in connection with the prior conviction, and
 
 that
 
 sentence resulted from conduct that
 
 is
 
 part of the present offense. In such a case, the defendant’s Criminal History Category ignores a prior conviction that, but for a subsequent violation of supervised release, would have been counted in determining his Criminal History Category. As such, the Criminal History Category “substantially under-represents the seriousness of the defendant’s criminal history,” U.S.S.G. § 4A1.3(a)(l), and an upward departure is appropriate.
 

 BLAKELY ISSUES
 

 While this case was pending before us, the Supreme Court issued its decision in
 
 Blakely v. Washington,
 
 — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Counsel for Loudon promptly filed a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, informing the court of the
 
 Blakely
 
 decision and of its potential impact on the United States Sentencing Guidelines generally and on Loudon’s sentence in particular. We have recently held, however, that, until the Supreme Court instructs otherwise (as it will have the opportunity to do when it considers the arguments in
 
 United States v. Booker,
 
 No. 04-104, and
 
 United States v. Fanfan,
 
 No. 04-105), we will assume that
 
 Blakely
 
 does not affect the Guidelines and, accordingly, that all sentences imposed in accordance with the Guidelines are valid.
 
 See United States v. Mincey,
 
 380 F.3d 102, 106 (2d Cir.2004).
 

 Notwithstanding the foregoing, the mandate in this case will be held pending the Supreme Court’s decision in
 
 Booker
 
 and
 
 Fanfan.
 
 Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court’s decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant’s sentence until after the Supreme Court’s decision in
 
 Booker
 
 and
 
 Fanfan.
 
 In that regard, the parties will have until 14 days following the Supreme Court’s decision to file supplemental petitions for rehearing in light of
 
 Booker
 
 and
 
 Fanfan.
 

 CONCLUSION
 

 For the reasons set forth above, the judgment of the district court is hereby Affirmed.