**UNITED STATES of America,**
**Appellee,**

v.

**John WEISSER, Defendant–Appellant.**

**Docket No. 01–1588.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 2005.

Decided June 20, 2005.

Amended July 5, 2005.

---

Mary Anne Wirth, Bleakley, Platt &
Schmidt, LLP, White Plains, NY, for Appellant.

Jason M. Weinstein, Special Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Celeste L. Koeleveld, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before: WALKER, Chief Judge, CARDAMONE, Circuit Judge, and OWEN, District Judge.*

JOHN M. WALKER, JR., Chief Judge.

Defendant-appellant John Weisser appeals from the judgment of the United States District Court for the Southern District of New York (Richard Conway Casey, *Judge* ), convicting him of (1) using a facility of interstate commerce to entice a minor to engage in a sexual act, in violation of 18 U.S.C. § 2422(b); (2) traveling in interstate commerce for the purpose of engaging in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b); and (3) transporting child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1). The district court sentenced Weisser principally to 210 months' imprisonment. On appeal, Weisser argues (1) that the destruction of certain trial exhibits in the terrorist attacks of September 11, 2001 deprived him of his right to appeal, and (2) that his trial counsel was ineffective. He also raises several challenges to his sentence. For the reasons that follow, we affirm in all respects except one and remand for consideration of whether to resentence pursuant to *United States v. Crosby*, 397 F.3d 103, 117 (2d Cir.2005).

## BACKGROUND

On December 28, 1999, John Weisser, a thirty-eight-year-old male living in San Francisco, initiated an instant message chat session with an America Online ("AOL") subscriber with the screen name "Skaterboard88" ("Skaterboard"). Skaterboard's AOL profile identified him as an eleven- or twelve-year-old boy living in New York; he was, however, the fictitious creation of undercover federal law enforcement officers. Over the next four months, Weisser and Skaterboard conducted over sixty chat sessions and email exchanges. In these communications, Weisser expressed his sexual preference for "younger guys" and discussed in graphic language the kinds of sexual activity in which he had previously engaged with minors, as well as the sexual activities in which he proposed engaging with Skaterboard during Weisser's next trip to New York. His messages were designed to gain Skaterboard's trust; he assured Skaterboard that he was "pretty nice," that he would "watch out" for Skaterboard, and that he would "NEVER do anything to make [Skaterboard] NOT trust [him]." He also repeatedly tried to verify Skaterboard's age, at one point requesting a photograph of Skaterboard and explaining that he wanted to be sure Skaterboard was not a "fake." On two occasions, Weisser spoke on the telephone with United States Secret Service Special Agent Susan Rice, a female agent posing as Skaterboard.

Over the course of several chat sessions in March 2000, Weisser arranged to meet Skaterboard in New York the following month. Weisser told Skaterboard that he wanted Skaterboard to stay in the hotel with him for an entire night, asked whether Skaterboard would paint Weisser's body, and promised to bring him computer games, slippers, and matching outfits for the two of them to wear to a baseball

---

* The Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

game. He expressly stated that he wanted to have sex with Skaterboard. He also formulated and reformulated a detailed plan for Skaterboard to miss school in order for Skaterboard to spend the day with Weisser, without attracting the attention of his mother. In the final days before the trip, Weisser sent Skaterboard his flight information and promised to email Skaterboard upon arriving at his hotel, the Grand Hyatt at Grand Central Station. He also told Skaterboard to meet him there between 8:30 a.m. and 9:00 a.m. on the morning of April 27, 2000.

Weisser checked into the Grand Hyatt during the early morning hours of April 27 and promptly sent Skaterboard an email message with his hotel room number and telephone number. At 8:37 a.m., he sent Skaterboard another message, asking "[W]here are you?" One minute later, federal agents entered Weisser's hotel room and arrested him. A subsequent search of the room revealed several items of sexual paraphernalia and a CD in Weisser's briefcase containing images of child pornography.

At trial, Weisser's principal defense was that he did not actually think that Skaterboard was a child, but instead believed Skaterboard was an adult posing as a child. In this vein, Weisser asserted that he was not sexually interested in minors; that he had planned to expose Skaterboard as a fake on his trip to New York; and that his sexual preferences differed from those he expressed through his online persona. Weisser also claimed that he did not know that the CD containing pornographic images was in his briefcase when he flew across the country.

The government's principal evidence at trial consisted of transcripts of the chat sessions between Weisser and Skaterboard and tapes of their two phone conversations. The communications vividly illustrated the evolution of Weisser and Skaterboard's online relationship, as well as the detailed plans Weisser had made for his trip to New York. The government also introduced transcripts of chats between Weisser and other individuals, in which Weisser discussed both his general desire to have sex with young boys and his specific plan to travel to New York to have sex with a minor. Finally, the government demonstrated that the CD in Weisser's briefcase, of which he claimed to be ignorant, had been created the day before Weisser flew to New York by transferring previously downloaded images from Weisser's computer to the CD. The jury convicted Weisser on all counts, and this appeal followed.

## DISCUSSION

### I. Destroyed Trial Exhibits

Weisser's principal claim is that the destruction of certain government exhibits in the terrorist attacks on the World Trade Center on September 11, 2001 has rendered illusory his right to appeal. He argues that without these exhibits, his appellate counsel cannot determine whether his trial counsel was effective. Weisser claims that the usual remedy, reconstruction of the record, see Fed. R.App. P. 10(c), is impossible and that the alternative remedy, a new trial without the exhibits, would be irremediably unfair. See United States v. Charles, 313 F.3d 1278, 1283 (11th Cir. 2002) (discussing the two remedies). Thus, he urges reversal of his conviction in its entirety.[1]

1. A defendant who claims that he cannot perfect an appeal due to gaps in the record on appeal may move for a new trial before the district court under Fed.R.Crim.P. 33. See, e.g., United States v. Huggins, 191 F.3d 532, 536 (4th Cir.1999). Weisser apparently did

### A. Specific Prejudice Requirement

We first consider whether, in order to merit relief, an appellant must allege specific prejudice to his right to appeal resulting from gaps in the record on appeal. In two previous cases, we required a showing of prejudice by the appellant before relief based on missing documents in the record could be granted. In *United States v. Di Canio*, 245 F.2d 713, 715 (2d Cir.1957), in which the court stenographer died before he was able to transcribe his notes, we held that "[t]he absence of a completely accurate transcript does not, without more, invalidate a conviction," and that a new trial would only be "necessary" if "the defects of the record [were] of a prejudicial character." *See also United States v. Smart*, 448 F.2d 931, 936 (2d Cir.1971) ("[Appellant] failed to show *any prejudice* to his right to appeal resulting from the missing documents." (emphasis added)).

A prejudice requirement has now been adopted by almost every circuit to consider the issue in the context of missing or inaccurate trial transcripts.[2] In the First, Third, Fourth, Sixth, Eighth, Ninth, and Tenth Circuits, relief is accorded an appellant only when a gap in the record "specifically prejudices his ability to perfect an appeal." *United States v. Huggins*, 191 F.3d 532, 534, 537 (4th Cir.1999); *accord United States v. Haber*, 251 F.3d 881, 890 (10th Cir.2001); *United States v. Kelly*, 167 F.3d 436, 438 (8th Cir.1999); *United States v. Brand*, 80 F.3d 560, 563 (1st Cir.1996); *United States v. Sierra*, 981 F.2d 123, 126 (3d Cir.1992); *United States v. Antoine*, 906 F.2d 1379, 1381 (9th Cir. 1990); *United States v. Gallo*, 763 F.2d 1504, 1530–31 (6th Cir.1985); *see also United States v. Todd*, 287 F.3d 1160, 1164 (D.C.Cir.2002) (weighing against other factors defendant's ability to allege specific prejudice, although not requiring a prejudice showing). Only the Fifth and Eleventh Circuits have taken a different approach, and then only when the defendant is represented by new counsel on appeal. In that circumstance, those courts grant the defendant relief whenever a "substantial and significant portion of the record" is missing. *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977); *see also United States v. Preciado–Cordobas*, 981 F.2d 1206, 1212 (11th Cir.1993) (same). This minority rule, however, may have undesirable consequences, since it "creates the perverse incentive [for] defendants to dismiss trial counsel and seek new appellate counsel whenever questions arise over the sufficiency of the trial transcript." *Huggins*, 191 F.3d at 537.

A prejudice requirement, by contrast, makes sense: Where gaps in the record on appeal bear no relation to a litigant's ability to prosecute his appeal, relief is not warranted. We thus follow and reaffirm our holdings in *Smart* and *Di Canio*, and require an appellant to show

not bring such a motion below, but instead chose to immediately prosecute his appeal. Although we are remanding the case in connection with his sentence, his claims based on gaps in the record are easily disposed of on the merits, and we thus resolve them here without requiring further proceedings in the district court.

2. These cases involve violations of the Court Reporters Act ("CRA"), 28 U.S.C. § 753(b), which requires that all proceedings in criminal cases held in open court be recorded.

Although Weisser's case does not involve gaps in the trial transcript, but rather a number of missing government exhibits, the CRA cases are nonetheless relevant. Both CRA violations and the situation presented here raise the same concern—*i.e.*, the likelihood that reversible error occurred, but cannot be discerned due to gaps in the record on appeal. *See United States v. Carrazana*, 70 F.3d 1339, 1343 (D.C.Cir.1995) (discussing this concern in the CRA context).

specific prejudice to his ability to perfect an appeal, regardless of whether he is represented by new counsel on appeal, before we will grant relief based on gaps in the record.

## B. Analysis

■ Prejudice exists if the record is "so deficient that it is impossible for the appellate court to determine if the district court has committed reversible error." *Id.* (internal quotation marks omitted). Weisser has failed to make the requisite showing.

Weisser claims that without three specific exhibits his appellate counsel is unable to determine whether trial counsel provided effective assistance. First is the "Power Tools" file, a record of over 1400 chat sessions between Weisser and individuals other than Skaterboard.[3] Second are the recordings of two telephone calls between Weisser and Agent Rice as Skaterboard, one of which was played for the jury. Third is the record of chats between Weisser and "Lonelykid," an AOL user who identified himself as a child, and with whom Weisser engaged in sexually explicit online conversation. Weisser argues that each of the three exhibits contained potentially exculpatory material, which trial counsel may have been able to put to better use, and without which trial counsel's effectiveness cannot be assessed.[4] As a result, Weisser contends, he cannot know whether he has a viable ineffective assistance claim and thus his right to appeal has been prejudiced.

■ We acknowledge that inability to raise an ineffective assistance claim due to gaps in the record may support a claim of specific prejudice. *See Todd,* 287 F.3d at 1163–64. But, as we explain below, Weisser's own argument reveals that even if these exhibits were available, he would not have a colorable claim of ineffective assistance. Their absence therefore cannot prejudice his right to appeal.

The well-known standard for ineffective assistance claims is high. A defendant must (1) show that counsel's performance was deficient and fell below "an objective standard of reasonableness," and (2) "affirmatively prove prejudice," by demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–89, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674. (1984). Under the first inquiry, there is "a strong presumption that counsel's conduct [was] within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. Strategic or tactical decisions usually fall within that range. *See id.* at 689, 691, 104 S.Ct. 2052; *United States v. Diaz,* 176 F.3d 52, 113 (2d Cir.1999); *Trapnell v. United States,* 725 F.2d 149, 155 (2d Cir. 1983). As for the second inquiry, failure to show sufficient prejudice will doom an ineffective assistance claim, even where counsel has committed serious error,

---

3. "Power Tools" is the name of the computer program that works with AOL software and captures the date, time, and complete text of all instant messages or chat sessions in which the user engages in AOL.

4. According to Weisser, the Power Tools file, which his trial counsel allegedly failed to examine, contained potentially exculpatory material demonstrating (1) that adults often pretend to be children on the internet, and (2) that Weisser's online persona did not reflect his actual sexual preferences. The recordings of Agent Rice might, Weisser argues, have been used more effectively at trial to corroborate his claim that he did not believe Skaterboard was a child. Finally, the transcripts of chat sessions between Weisser and Lonelykid may, according to Weisser, have further supported his claim that he was not sexually interested in minors by showing (1) that Lonelykid was not a child, and (2) that some adults on the internet pretend to be children.

*Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, particularly where the government's case is strong, *see, e.g., Strouse v. Leonardo,* 928 F.2d 548, 556 (2d Cir.1991).

█ Under *Strickland,* it is plain to us that Weisser would not have a viable ineffective assistance claim even if the exhibits had not been destroyed. For example, Weisser contends that both the Power Tools file and the Lonelykid transcripts would have demonstrated that adults sometimes pretend to be children on the internet. But the undisputed fact that some adults pose as boys on the internet would not have said anything about Weisser's intent as to Skaterboard. Even were the exhibits available, we would conclude with little difficulty that trial counsel's failure to have emphasized this point was hardly "objectively unreasonable."

Similarly empty is Weisser's claim with regard to the missing Agent Rice tapes, of which the second was played for the jury. In their absence, Weisser contends that his appellate counsel is unable to determine whether trial counsel erred in failing to play the first tape, and whether trial counsel "made appropriate use" of the second tape. We easily dismiss the suggestion that an ineffective assistance claim could be based on trial counsel's decision to play one tape rather than the other; such decisions are clearly strategic. *See Diaz,* 176 F.3d at 113; *Trapnell,* 725 F.2d at 155. We also reject Weisser's attempt to argue that an ineffective assistance claim could be based on the way trial counsel "use[d]" the second tape; we are simply unpersuaded that the *manner* in which trial counsel chose to play the tape, plainly a strategic decision, could be deemed "objectively unreasonable." Once again, Weisser's own argument makes clear that even if the tapes were available, he would be unable to mount an ineffective assistance claim based on counsel's use of them.

There is a more fundamental weakness in Weisser's missing-exhibits argument. Weisser acknowledges that any exculpatory evidence that might have been gleaned from these exhibits would only have played a corroborative role. In other words, the exhibits would have provided only limited support for the defense advanced by Weisser's own testimony. For example, the Power Tools file and the Lonelykid transcripts might have bolstered indirectly Weisser's claim that he did not believe Skaterboard was a child by indicating that Weisser knew that adults sometimes impersonate children on the internet. Similarly, the tapes of Agent Rice might have aided Weisser's defense if they clearly supported his contention that Rice sounded like an adult woman. But, as Weisser's own claims make clear, none of these exhibits would have been central to his defense. They would instead have offered only tangential support for the claims Weisser and his counsel presented.

We are confident that counsel's failure, if any,[5] to make better use of the missing exhibits did not rise to the level of deficient performance that a defendant must show under *Strickland.* Most of the exhibits at issue were before the jury, and we cannot see how counsel's treatment of the exhibits could be deemed "objectively unreasonable."

Similarly remote is the possibility that trial counsel's alleged misuse of the exhibits could have prejudiced Weisser's defense under *Strickland*'s second inquiry. The transcripts of Weisser's chat sessions

---

**5.** It is not certain that the exhibits would have corroborated Weisser's story. The Agent Rice tapes, for example, may have revealed that the agent's voice sounded very much like that of a young boy, justifying trial counsel's decision to limit their use.

amply demonstrated his sexual appetite for young boys generally, and for Skaterboard in particular. Even if we were to accept Weisser's speculation that the missing Power Tools file contained evidence corroborating his testimony that he enjoyed exposing adults who pretended to be children online, the jury had ample evidence from which to conclude that defendant's trip to New York was not for that purpose. The government's account was confirmed by the fact that Weisser was waiting for Skaterboard when he was arrested, surrounded by the items that he had promised to bring to New York for Skaterboard. The jury had before it a mountain of evidence supporting Weisser's guilt. Any plausible error by trial counsel with regard to these few exhibits simply does not "undermine confidence in the [verdict.]" *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In sum, even if the missing exhibits were available, trial counsel's treatment of them would not support an ineffective assistance claim. Therefore, their destruction has not prejudiced Weisser's ability to bring such a claim on appeal and accordingly does not warrant relief.

## II. Ineffective Assistance of Counsel

Apart from his argument that certain missing exhibits could potentially have supported an ineffective assistance claim on appeal, Weisser also argues that the record as it stands supports such a claim. We disagree.[6]

■ We first reject Weisser's contention that trial counsel was ineffective be-

cause counsel failed to review or make use of potentially exculpatory material in the Power Tools file. Trial counsel's close questioning of government agents as to the identity of two of Weisser's chat partners strongly suggests that he was, in fact, well acquainted with the contents of the file. *See Wise v. Smith*, 735 F.2d 735, 738–39 (2d Cir.1984) (finding effective assistance where counsel's close cross-examination of prosecution's witnesses demonstrated that he was "well prepared" and had a "good grasp of the facts"). In any event, as we have already explained, any such exculpatory material would have provided at most only indirect corroboration for his claims. Trial counsel's failure to make use of that material was therefore not objectively unreasonable.

■ Second, Weisser argues that trial counsel did not argue forcefully enough that Lonelykid and another AOL user known as "Cutoffsboy," two of Weisser's chat partners whose AOL profiles indicated that they were young boys and with whom Weisser chatted online, may actually have been adults. But, as Weisser himself admits, trial counsel in fact repeatedly questioned the government's witness about the sex, age, and identity of Lonelykid and Cutoffsboy. *See id.* Furthermore, even if trial counsel had pursued such an inquiry, it would have been secondary to the question of whether Weisser believed that Skaterboard was an adult.

■ Third, trial counsel's failure to object to the government's questions concerning Weisser's criminal history, including a 1986 conviction for child molestation,

---

6. As a general rule, we do not entertain ineffective assistance claims on direct appeal, *see Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), unless the record is fully developed and "resolution of the Sixth Amendment claim ... is beyond any doubt," *United States v. Gaskin*,

364 F.3d 438, 468 (2d Cir.2004). Nevertheless, we dispose of Weisser's ineffective assistance claims because the record before us demonstrates "beyond any doubt" that Weisser cannot satisfy the demanding two-part inquiry established by *Strickland*.

cannot support an ineffective assistance claim because it was not error to allow them. During its case-in-chief, the government was limited to introducing the fact, but not the circumstances, of the conviction, and it scrupulously complied with this restriction. Only after Weisser opened the door by testifying that he was not sexually interested in minors did the government use the circumstances of his previous conviction on cross-examination to impeach his credibility. *See United States v. Payton*, 159 F.3d 49, 58 (2d Cir. 1998) ("A defendant has no right to avoid cross-examination into the truth of his direct examination, even as to matters not related to the merits of the charges against him."). Counsel's failure to object was not error because any objection would have been futile. *See United States v. Atherton*, 936 F.2d 728, 734 (2d Cir.1991).

 Fourth, Weisser challenges trial counsel's failure to object to the admission of chat sessions between Weisser and individuals other than Skaterboard, many of which were sexually explicit, on grounds that the content was unduly prejudicial. In light of the plethora of other properly admitted material, however, much of which was graphic and explicit, the introduction of these chat sessions, even if erroneous, was not sufficiently prejudicial to warrant reversal.

Finally, Weisser contends that trial counsel's failure to ask the court to define "*modus operandi*" in connection with a limiting instruction was objectively unreasonable. In view of a government agent's testimony that the exhibits were being introduced to show Weisser's method—*i.e.*, his *modus operandi*—of seducing minors online, and Weisser's failure to offer any evidence that the jury did not understand what *modus operandi* means, we find no error.

III. Sentencing Issues

 Weisser also challenges several aspects of his sentence. At sentencing, the district court imposed multiple enhancements, which resulted in a thirteen-level increase in offense level and a three-level increase in criminal history category. Weisser contends that his sentence violated the Sixth Amendment and, in addition, challenges three of these enhancements specifically. We agree with Weisser that because the district court increased his sentence above the applicable Guidelines range based in part on facts not proven to the jury beyond a reasonable doubt, his sentence violated the Sixth Amendment. *See United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005). We therefore remand the case to the district court pursuant to the procedure established by this court in *United States v. Crosby*, 397 F.3d at 117.

 Because we are remanding, we address Weisser's non-*Booker* sentencing objections at this juncture to aid the district court on remand. When reviewing a district court's application of the Guidelines in the post-*Booker* era, we examine questions of law *de novo* and issues of fact for clear error. *See United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir.2005). Disposing of Weisser's non-Sixth Amendment claims prior to remand forecloses future challenges to his sentence on these grounds, though it does not foreclose reasonableness review of Weisser's sentence on other grounds. *United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir.2005); *see United States v. Fagans*, 406 F.3d 138, 141 & n. 2 (2d Cir.2005).

*A. Section 2G2.2(b)(5) Computer–Use Enhancement*

Section 2G2.2(b)(5) of the Guidelines provides for a two-level enhancement "[i]f a computer was used for the transmission

of [child pornography] or a notice or advertisement of the material."[7] The district court applied § 2G2.2 to Weisser's conviction for transporting the CD across state lines and further applied the two-level enhancement because he had used a computer. Weisser, raising a question of first impression in this circuit, challenges on two grounds the district court's application of this provision. He argues (1) that § 2G2.2 was the wrong Guideline to apply because it applies only to crimes involving "intent to traffic," and (2) that even if § 2G2.2 is applicable, the two-level enhancement for computer use was erroneous. We disagree on both counts.

### 1. Section 2G2.2 and Intent to Traffic

█ Weisser's first argument is that the district court should have applied § 2G2.4, which has a base offense level of 15, rather than § 2G2.2, which has a base offense level of 17, to his conviction for transporting child pornography. This claim is raised for the first time on appeal, and thus we need not consider it. *See, e.g., Mattel, Inc. v. Barbie–Club.com,* 310 F.3d 293, 306 (2d Cir.2002). Nevertheless, because the case is being remanded, we address and reject Weisser's arguments.

Section 2G2.2 is titled

Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic.

Section 2G2.4, by contrast, covers only simple "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." However, § 2G2.4 also contains a cross-reference:

If the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply § 2G2.2 ....

U.S.S.G. § 2G2.4(c)(2).[8]

Because Weisser was convicted of "transporting" child pornography across state lines, the district court naturally applied § 2G2.2, which expressly covers "transporting" offenses. Weisser, however, asserts that § 2G2.4 was in fact the proper Guideline to apply. He relies on the slight inconsistency between § 2G2.2 and the cross-reference to § 2G2.2 contained in § 2G2.4(c)(2), specifically contending that § 2G2.2 should only apply to offenses involving intent to traffic. Presumably, Weisser believes that the phrase "intent to traffic" contained in § 2G2.4(c)(2) modifies all of the preceding gerunds (including "transporting"), and not just "possessing." Section 2G2.4(c)(2),

---

7. The district court appropriately used the November 1, 1998 version of the Guidelines, and all Guideline sections discussed herein are from that version, unless otherwise noted.

8. Other courts have noted a confusing overlap between the two Guidelines that is not relevant here. Specifically, § 2G2.2 applies to "receiving" offenses, while the less-harsh § 2G2.4 applies to "possessing" offenses. This is puzzling because "possessors, unless they fabricate their own pornography, are also receivers." *United States v. Richardson,* 238 F.3d 837, 839 (7th Cir.2001). This overlap, however, is inapplicable in this case because Weisser was not charged with possessing or with receiving, but rather with *transporting* child pornography. Section 2G2.2 explicitly covers transporting offenses, and § 2G2.4 explicitly does not. Cases in which courts have struggled with the possessing/receiving distinction are thus not directly relevant. *See, e.g., United States v. Dodds,* 347 F.3d 893, 900–02 (11th Cir. 2003); *United States v. Sromalski,* 318 F.3d 748, 753–54 (7th Cir.2003); *United States v. Boyd,* 312 F.3d 213, 216–17 (6th Cir.2002).

according to Weisser, thus directs the court to apply § 2G2.2 only where the "transporting" offense involved "intent to traffic." He further claims that the transporting conduct in which he engaged—carrying the CD from California to New York—did not evince an intent to traffic. Therefore, he concludes, the district court erred in applying § 2G2.2.

We disagree. Despite their minor differences in punctuation, both §§ 2G2.2 and 2G2.4(c)(2) require the application of § 2G2.2 whenever a defendant is convicted of transporting child pornography. Section 2G2.2's caption indicates that the Guideline applies to "transporting" offenses, regardless of intent to traffic. Only "possessing" is modified by "intent to traffic" because a semi-colon separates that clause from the other clauses, including the clause listing "transporting." *See In re Frieouf*, 938 F.2d 1099, 1103 (10th Cir.1991) (of two clauses separated by a semi-colon, modifier of second clause does not modify first, and vice versa).

Section 2G2.4(c)(2) also directs the court to apply § 2G2.2 to transporting offenses and, contrary to Weisser's belief, does not limit its scope to transporting offenses that involve "intent to traffic." Section 2G2.4(c)(2) contains a serial list in which the final modifying phrase—"with intent to traffic"—is not preceded by a comma. Under standard rules of English grammar, that phrase is read to modify only the final

clause—*i.e.,* "possessing material involving the sexual exploitation of a minor." *Cf. Elliot Coal Mining Co. v. Director, Office of Workers' Comp. Programs,* 17 F.3d 616, 630 (3d Cir.1994) ("[The] use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase."); *Resolution Trust Corp. v. Nernberg,* 3 F.3d 62, 65 (3d Cir. 1993) (noting the same and collecting sources). "Intent to traffic," therefore, does not modify any of the preceding gerunds in the serial list, such as "transporting." Thus, § 2G2.4(c)(2), like § 2G2.2, directs the court to apply § 2G2.2 whenever a transporting offense is involved, regardless of intent to traffic.

We recognize, of course, that syntax and punctuation may not be dispositive in every case. *See id.* But where, as here, an appellant's claim rests entirely on an alleged inconsistency in syntax, a grammatical analysis that reveals no such inconsistency must provide the final answer. Weisser was convicted under 18 U.S.C. § 2252A(a)(1) of transporting child pornography in interstate commerce. Both §§ 2G2.2 and 2G2.4(c)(2) direct the sentencing court to apply § 2G2.2 when the offense involves "transporting" child pornography, without regard to "intent to traffic." Accordingly, the district court properly applied § 2G2.2.[9]

---

9. Also informative are the revisions made to the Guidelines since 1998. First, §§ 2G2.2 and 2G2.4 have been merged; the § 2G2.4(c)(2) cross-reference, and any potential confusion arising from it, have thus been eliminated. Second, the new caption to § 2G2.2 strongly suggests that "intent to traffic" was always intended to apply only to "possessing material," and not to any other gerunds. The caption to § 2G2.2 now reads:

Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising

Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor. U.S.S.G. § 2G2.2 (2004). "Intent to traffic" remains separated from the "transporting" clause by a semi-colon. Moreover, the second "possessing" clause indicates that "intent to traffic" only modifies the clause within the same semi-colon because the second "possessing" clause would be rendered superfluous if "intent to traffic" also applied to it.

### 2. Computer–Use Enhancement

■ Weisser also argues that even if § 2G2.2 is the appropriate Guideline, the subsection providing for a computer-use enhancement does not apply. He contends that the enhancement—which applies if "a computer was used for the transmission of the material," U.S.S.G. § 2G2.2(b)(5)—is inapplicable to him because the act of transporting for which he was convicted was physically carrying the CD from California to New York, an act that concededly did not involve the use of a computer.

Although we have not previously confronted this question, the Third Circuit, applying reasoning that we find persuasive, recently addressed precisely this issue. In *United States v. Harrison*, 357 F.3d 314 (3d Cir.2004), *vacated on other grounds, Harrison v. United States,* —— U.S. ——, 125 S.Ct. 1027, 160 L.Ed.2d 1012 (2005), the defendant had received pornographic images by computer and had then mailed disks containing those images. Rejecting Harrison's attempt to distinguish between the downloading (which involved use of a computer) and the mailing (which was the offense of conviction and which did not involve use of a computer), the court held that the district court had properly applied § 2G2.2(b)(5). *Id.* at 317. It emphasized that the material "had, at some point, been downloaded using [a] computer," *id.* at 319 n. 1, and found that the language of the Guideline supported imposition of the enhancement in such cases:

> [T]he language of § 2G2.2(b)(5) is specifically targeted toward "the material" and not "the offense," as are other portions of § 2G2.2. *The application of the*
>
> enhancement, therefore, does not hinge on whether the defendant used a computer to commit "the offense" for which he was convicted. Instead, the enhancement hinges on "the material" implicated in the offense, and whether this material had at some point been transmitted using a computer. There is no dispute that "the material" in this case had been so transmitted, and as a result, § 2G2.2(b)(5) is applicable.

*Id.* at 319 (emphasis added).

In addition to this linguistic analysis, policy reasons militate strongly in favor of application of the enhancement. The use of computers, and particularly the internet, in the child pornography context deserves special attention. *See id.* at 321 ("The guidelines recognize the enhanced threat posed by the Internet, which greatly increases the ease with which child pornography may be traded."); *Richardson,* 238 F.3d at 842 ("Use of the Internet enhances the dangers that child pornography poses, because it is a more discreet and efficient method of distribution."); *see also United States v. Dotson,* 324 F.3d 256, 260 (4th Cir.2003) (agreeing with *Richardson* court that "the very nature of the Internet provides an 'ominous method' for anonymous predatory criminal conduct"). Application of the enhancement where a computer was used in transmitting the pornographic materials underlying the offense thus serves to punish more severely what has been recognized as more dangerous behavior.

Accordingly, the district court properly applied § 2G2.2(b)(5) to the act of transporting a CD whose manner of creation—downloading—involved the "use of a computer." Moreover, this aspect of his sen-

---

Finally, the 2004 version of the Guideline directs the court to apply a lower offense level only to convictions for simple possession. *See id.* § 2G2.2(a)(1) (applying offense level 18 to convictions under 18 U.S.C. §§ 1466A(b), 2252(a)(4), and 2252A(a)(5)). All other convictions, including those, like Weisser's, under § 2252A(a)(1), are assigned a higher offense level. *Id.* § 2G2.2(a)(2).

tence does not appear to have involved a Sixth Amendment error, since the facts upon which the district court relied—Weisser's use of a computer in downloading the images and his transporting the images across the country—were, respectively, admitted by Weisser and necessarily found by the jury when it convicted him under 18 U.S.C. § 2252A(a)(1) of transporting child pornography in interstate commerce.

### B. Criminal History Category

Weisser next challenges the district court's departure, pursuant to U.S.S.G. § 4A1.3, from Criminal History Category III to Category VI. Section 4A1.3 provides for upward departures "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," and details multiple types of information that may justify a departure. The district court's horizontal departure violated the Sixth Amendment because it was based on facts not found by the jury.[10] In addition, we find that the district court erred in one other respect, but we conclude that the error does not require vacatur of the sentence prior to remand.

Weisser first argues that the court's reliance on his previous parole violations was improper both because they occurred nearly ten years earlier, and because he had already been punished for those violations. His arguments are unavailing. A district judge may properly consider past criminal conduct that occurred several years earlier. *See United States v. Simmons*, 343 F.3d 72, 79 (2d Cir.2003) (finding that the district court properly considered seventeen-year old convictions, although background information was "unavailable due to the passage of time"); *United States v. Delmarle*, 99 F.3d 80, 85 (2d Cir.1996) (finding that the district court properly considered a 26–year–old misdemeanor conviction for conduct similar to that underlying current conviction). Nor does Weisser's previous punishment for those parole violations prevent the district court from considering them. Section 4A1.3 itself lists prior punishment as a factor to be considered. *See* U.S.S.G. § 4A1.3(a), (b) (referring to "prior sentence(s)"); *see also United States v. Loudon*, 385 F.3d 795, 800 (2d Cir.2004) (upward departure warranted where prior conviction for which defendant received eight-month sentence was not reflected in criminal history category).

We likewise reject Weisser's contention that the district court improperly

---

**10.** Specifically, the district court relied on (1) Weisser's repeated parole violations after his release from prison on a child molestation conviction; (2) his repeated failure to register as a sex offender, as required by law; and (3) his "prior attempts to arrange sexual liaisons with other minors and his prior relationship with a teenage boy." Although certain facts of prior conviction are not subject to the Sixth Amendment's protections under the exception established in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the scope of that exception is unclear, *see Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 1262, 161 L.Ed.2d 205 (2005); *United States v. Fagans*,

406 F.3d 138, 141–42 (2005). Whether or not Weisser's previous parole violations fall within the *Almendarez–Torres* exception is open to debate, but we think that the other facts upon which the district court relied are "too far removed from the conclusive significance of a prior judicial record" to fall within that exception. *Shepard*, 125 S.Ct. at 1262; *cf. United States v. Gutierrez–Ramirez*, 405 F.3d 352, 359 (5th Cir.2005) (relying on *Shepard* and concluding that district court relied on facts that fell outside of the *Almendarez–Torres* exception, thus violating the Sixth Amendment); *United States v. Washington*, 404 F.3d 834, 841–42 (4th Cir.2005) (same).

found that he had not registered as a sex offender, as required by law. Weisser argues that he was "still registered in San Francisco at the time that he moved to Oakland." His registration in San Francisco, however, was irrelevant to his compliance with the registration requirement in Oakland. As the district court stated, Weisser's repeated failures to register, which resulted in a return to custody and a conviction, "demonstrate[d] a continuing disregard of the registration law"; that disregard of the law was properly construed by the district court as an indication of "likelihood that [Weisser would] commit other crimes." U.S.S.G. § 4A1.3. The district court's consideration of Weisser's failure to register may have been erroneous under *Booker*, but Weisser's specific objection to it has no merit.

▮ We also dismiss Weisser's claim that the district court erred in relying on his prior attempts to arrange sexual liaisons with minors. Weisser claims that those attempts were "relevant conduct" and thus cannot form the basis of an increase in criminal history category. While it is true that a district court may not base a horizontal departure on conduct "relevant to the offense of conviction," *United States v. Fuller*, 332 F.3d 60, 67 (2d Cir. 2003) (internal quotation marks omitted); *United States v. Hernandez*, 941 F.2d 133, 139 (2d Cir.1991) (same), that prohibition does not apply here. Weisser was convicted of traveling in interstate commerce and using a facility of interstate commerce to entice Skaterboard to engage in a sexual act. His previous attempts to seduce other minors were not conduct "relevant to the offense of conviction."

▮ We do, however, agree with Weisser that the district court erroneously relied on Weisser's alleged previous sexual relationship with a teenage boy. The government does not dispute that the only

evidence of that relationship was in the chats between Skaterboard and Weisser; Weisser denied that he had ever been in any such relationship and claimed that he had made up the story in order to entice Skaterboard. The contents of internet chats alone are not the type of "reliable information" upon which a § 4A1.3 departure may be based. None of the cases cited by the government suggest otherwise, for in those cases, the sentencing court relied on information whose reliability had been established by some interaction with the legal system, such as a foreign conviction or a civil adjudication. *See, e.g., United States v. Brennan*, 395 F.3d 59, 72 (2d Cir.2005) (relying on SEC civil adjudication of fraud); *United States v. Soliman*, 889 F.2d 441, 445 (2d Cir.1989) (relying on foreign conviction); *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989) (relying on testimony of government agents and informants). While the conversation about the alleged relationship may have been relevant insofar as it concerned Weisser's method of seducing Skaterboard, the alleged relationship itself was not established by "reliable information," and thus could not properly form the basis for a § 4A1.3 departure.

▮ Although the district court erred in relying on the alleged relationship, we find it unnecessary to vacate Weisser's sentence at this time. Where, as here, the error concerned but one factor in a district court's multi-factor decision, vacatur is not automatically warranted. *See Rubenstein*, 403 F.3d at 102 (Cardamone, J., concurring). Because the case is already being remanded pursuant to *Crosby*, the district court will have ample opportunity to consider whether he would have sentenced Weisser differently—and, specifically, whether he would have increased Weisser's criminal history category to a lesser

extent—had he not relied on the alleged relationship.

### C. Section 5K2.0 Upward Departure

Finally, Weisser challenges the district court's upward departure under § 5K2.0, based on Weisser's intent to engage in sexual activity with a minor while knowingly infected with HIV. Weisser does not dispute that he knew he was infected with HIV at the time of his arrest. In granting the upward departure, the district court relied on that fact, as well as the fact that (1) no condoms were found in the hotel room at the time of arrest, and (2) Weisser had, in chat sessions prior to his trip to New York, expressed his intention to leave condoms at home.

 Weisser wisely appears to concede that had there been an actual child, upward departure would have been warranted for an attempt to engage in sexual activity with that child while knowingly infected with HIV. *Cf. United States v. Blas,* 360 F.3d 1268, 1273–74 (11th Cir. 2004) (per curiam) (finding defendant's conduct "incredibly risky and dangerous" and concluding seven-level upward departure was warranted where defendant engaged in sexual activity with minor while knowingly infected with HIV, thereby "subjecting [her] to a communicable and potentially fatal, incurable disease"); *United States v. James,* 957 F.2d 679, 680 (9th Cir.1992) (four-level upward departure warranted where defendant infected minor with genital herpes, thereby causing "permanent bodily injury" under § 2A3.1(b)(4)). Instead, he contends that the departure was improper because there was "no victim, no child, and no sexual activity." This argument, which is essentially an argument of factual impossibility, is unavailing. It is hornbook law that factual impossibility is not a defense to a charge of attempt in substantive criminal law, *see, e.g., United States v. Hamrick,* 43 F.3d 877, 885 (4th Cir.1995) (en banc) (joining other circuits in so holding); *United States v. Contreras,* 950 F.2d 232, 237 (5th Cir.1991), and we see no reason why it should prevent the application of an appropriate guideline. The Guidelines punish attempts as severely as completed offenses. *See* U.S.S.G. § 2X1.1(b)(1) (stating that where defendant completes "all the acts [he] believed necessary for successful completion of the substantive offense," he should be punished as for completed offense). Indeed, the Guidelines specifically direct courts to base sentences on "any *intended* offense conduct that can be established with reasonable certainty." *Id.* § 2X1.1(a). Weisser's objections to this enhancement are without merit.

### CONCLUSION

For the foregoing reasons, we AFFIRM in part and REMAND to the district court for further proceedings consistent with this opinion and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).[11]

---

11. Any appeal taken from the district court following this remand can be initiated only by filing a new notice of appeal. *See* Fed. R.App. P. 3, 4(b). A party will not waive or forfeit any appropriate argument on remand or any appeal post-remand by not filing a petition for rehearing of this opinion.