09-3005-cr (L)
United States v. Persaud

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of February, two thousand eleven.

PRESENT:

> JOSÉ A. CABRANES,
> ROSEMARY S. POOLER,
> REENA RAGGI,
> *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                          Nos. 09-3005-cr (L),
                                                                            09-3019-cr (con),
                                                                            09-4935-cr (con)

SHAWN PERSAUD, ESTHER PERSAUD, and RONALD PERSAUD,

*Defendants-Appellants,*

PHILIP RECHNITZER,

*Defendant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

1

FOR APPELLANTS:               JAMES E. LONG, Albany, NY, *for appellant* Shawn Persaud.

DENNIS B. SCHLENKER, Albany, NY, *for appellant* Esther Persaud.

DONALD T. KINSELLA, Albany, NY, *for appellant* Ronald Persaud.

FOR APPELLEE:               RAJIT S. DOSANJH, Assistant United States Attorney (Richard S. Hartunian, United States Attorney, *on the brief*, and Thomas A. Capezza, *of counsel*), Office of the United States Attorney, Northern District of New York, Syracuse, NY.

Appeal from a judgment of conviction entered in the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court be **AFFIRMED**.

On June 27, 2007, a federal grand jury in the Northern District of New York returned a third superseding indictment against five defendants, Philip Rechnitzer, Ronald Persaud, Esther Persaud, Indranie Persaud, and Shawn Persaud. Ronald Persaud, his ex-wife, Esther, and Philip Rechnitzer were each charged with one count of conspiracy to commit wire fraud as well as numerous substantive counts of wire fraud. Ronald Persaud and his present wife, Indranie, were charged with two counts of mail fraud, and Esther Persaud was charged with one count of making false statements in a bankruptcy hearing. Finally, all defendants, including Ronald and Esther's son, Shawn, were charged with one count of conspiracy to launder monetary instruments.

The government's basic theory of the case is that Ronald and Esther Persaud falsely held themselves out to be officers of various financial institutions who could arrange to provide funding for various investment projects. Rechnitzer (in addition to other, unindicted co-conspirators) would identify investors looking for commercial funding and then ask these investors to provide "advance fees" to Ronald Persaud on the false promise that substantial commercial loans would be forthcoming. As part of the scheme, investors were provided with forged term sheets and bank commitment letters. In all, this fraudulent enterprise generated $1.6 million in advance fees without providing a dollar of commercial funding. Furthermore, the government alleged that all defendants—including Shawn and Indranie Persaud—participated in a conspiracy to launder these proceeds through a series of financial transactions.

Philip Rechnitzer and Indranie Persaud pleaded guilty pursuant to plea agreements. The government then proceeded to trial against Ronald, Esther, and Shawn Persaud. A jury found Ronald and Esther Persaud guilty of all charges against them, save for one count of wire fraud. Shawn Persaud was found guilty of conspiracy to launder monetary instruments. The appeals of

Shawn Persaud, Esther Persaud, and Ronald Persaud have been consolidated for our review.[1] Assuming the parties' familiarity with the underlying facts and procedural history of the case, we will address the claims of each appellant in turn.

*(1) Shawn Persaud*

On appeal, Shawn Persaud ("Shawn") raises four challenges to his conviction for conspiracy to launder monetary instruments.

First, Shawn argues that he was substantially prejudiced by the District Court's denial of his motion for a severance. Whether to grant or deny a severance motion is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989). "The district court's exercise of that discretion is virtually unreviewable." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (quotation marks omitted). Accordingly, a district court's denial of a severance motion under Federal Rule of Criminal Procedure 14 will be reversed "only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion." *Id.* (quotation marks omitted). As the Supreme Court has further explained, "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1996).

Shawn contends that he wanted to testify in his own defense, but was improperly forced to choose between exercising this trial right and fulfilling the "moral obligation of blood, kinship and loyalty by a son to his mother and father" since his own testimony might have implicated his parents. Shawn provides no evidence that this asserted "moral obligation" is legally cognizable, so we cannot say that the District Court erred in denying Shawn's motion for a severance, much less that the decision of the District Court constituted an abuse of discretion.

Shawn's second argument is that the government presented insufficient evidence at trial to sustain his conviction for conspiracy to launder monetary instruments. More specifically, Shawn argues that there was no proof, circumstantial or otherwise, that he knew that the financial transactions he participated in were designed, in whole or in part, to conceal the proceeds of unlawful activity. We review a challenge to the sufficiency of the evidence *de novo*. *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997).

> "In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden." *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003). In considering such a challenge, we must credit every inference that could have been drawn in the

---

[1] We have unconsolidated the appeal of Philip Rechnitzer, No. 10-0598-cr (con).

government's favor, and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have [reached the conclusion of] guilt beyond a reasonable doubt. "We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Morrison*, 153 F.3d 34, 39 (2d Cir. 1998). [Items] of evidence must be viewed not in isolation but in conjunction, and the conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*United States v. Reifler*, 446 F.3d 65, 94-95 (2d Cir. 2006) (citations omitted). *See generally Jackson*, 443 U.S. 307.

Upon examination of the record, we conclude that the evidence was sufficient to support the jury's guilty verdict. In particular, the government presented evidence that Shawn Persaud attended a meeting between Ronald Persaud and his victims, during which the victims accused Ronald Persaud of taking their advance fees without ever intending to secure the promised commercial funding. Additionally, the government established that hundreds of thousands of dollars in advance fees were transferred to bank accounts under Shawn's control, yet Shawn failed to report any of this income in his tax filings. Finally, the jury also heard evidence that Shawn himself would sometimes engage in multi-layered transactions in order to make routine purchases. When all of this evidence is taken together, a jury could fairly conclude that Shawn (1) was aware of the fraudulent scheme being perpetrated by his parents, and (2) knew that he was receiving substantial proceeds from that illegal activity.

Shawn's third argument is that his money laundering conviction cannot stand, as a matter of law, in light of the Supreme Court's opinion in *United States v. Santos*, 553 U.S. 507 (2008). In *Santos*, a fractured disposition of the Court held that, at least for certain underlying crimes, the word "proceeds" in the money laundering statute (18 U.S.C. § 1956) means net income (or profits) rather than gross income. *See Santos*, 553 U.S. at 523-28 (Stevens, J., concurring).[2]

But *Santos* is of no help to Shawn. First, the jury was specifically instructed that the term "proceeds" means "illegal profits" and that it "does not mean gross receipts." Furthermore, the government introduced plenty of evidence that the money laundering transactions in question involved "profits" from the underlying fraud. In particular, the jury heard evidence of how the Persauds used layered financial transactions to purchase personal items such as a car or a home.

---

[2] Following *Santos* (and the indictment in the instant case), Congress amended the statute to include "gross receipts" as part of the definition of "proceeds." Pub. L. No. 111-21, § 2(f)(1), 123 Stat. 1618 (2009) (codified at 18 U.S.C. § 1956(c)(9)).

Finally, Shawn contends that he was denied a fair trial based on remarks made by the prosecutor in the rebuttal summation. In relevant part, the prosecutor stated: "Ladies and gentlemen, there comes a time in every case when a lawyer has to stop, let go and say to the jury, I trust you. That time is now in this case. I appreciate your time. Thank you and I trust you."

We review the denial of a motion for a mistrial for abuse of discretion. *United States v. Deandrade*, 600 F.3d 115, 118 (2d Cir. 2010). *See generally Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (quotation marks omitted)). In setting forth a prosecutorial misconduct claim based on remarks made during the course of trial, a defendant bears "a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of [his] right to a fair trial." *United States v. Locasio*, 6 F.3d 924, 945 (2d Cir. 1993). Furthermore, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

We agree with the District Court's conclusion that "what [the prosecutor] really was saying is he's putting the matter in the jury's hands and let them decide the case." The prosecutor did not "vouch" for any of his witnesses or inflame the passions of the jury during his closing remarks. Certainly, the prosecutor's remarks did not have the effect of denying Shawn a fair trial.

*(2) Esther and Ronald Persaud*

Esther and Ronald Persaud also raise multiple challenges to their respective convictions. We have already dealt with their arguments concerning alleged prosecutorial misconduct and *Santos* in our consideration of Shawn's appeal. All that remains, then, is Esther and Ronald's argument for why their motion for a severance should have been granted.

Unlike their son Shawn, Esther and Ronald do not claim that joinder improperly forced them to choose between invoking their constitutional right to testify in their own defense and their sense of family loyalty. Instead, they contend they were substantially prejudiced by their son's "antagonistic defense." While Shawn's defense was not necessarily antagonistic to the cause of his parents—in other words, Shawn was not essentially required to demonstrate his parents' guilt in order to exonerate himself—it is true that, during the course of the trial, Shawn's counsel did make certain comments to the jury portraying her client as a victim of his parents.[3] But an antagonistic

---

[3] For instance, in her closing argument, Shawn's counsel told the jury, "I don't think any of us had to come to terms with the stark realities and fallibility of our parents quite to the degree of Shawn Persaud. What a slap in the face

5

defense is not prejudicial *per se*. *Zafiro*, 506 U.S. at 538. Again, "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

To the extent that some statements made by Shawn's counsel had the ability to unduly influence the jury, the District Court properly advised the jury not to treat statements by counsel as "evidence" in this case. Furthermore, the jury's verdict is supported by overwhelming evidence. We thus have no reason to believe that the District Court's refusal to grant the motion for a severance prevented the jury from making a reliable judgment about the guilt or innocence of Esther and Ronald Persaud. Accordingly, we cannot conclude that the District Court erred, much less abused its discretion, in denying this motion.

Lastly, we find Ronald Persaud's claim that his sentence of 188 months' imprisonment was both procedurally and substantively unreasonable to be without merit. Ronald first argues that the his sentence is procedurally unreasonable because the District Court erred in applying the two level "sophisticated means" enhancement of § 2B1.1(b)(9)(C) of the United States Sentencing Guidelines ("Guidelines"). We review an application of the Guidelines *de novo*. *United States v. Loudon*, 385 F.3d 795, 797 (2d Cir. 2004). The commentary to the Guidelines defines sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution of concealment of an offense." U.S.S.G. § 2B1.1(b)(9)(C) cmt. n.8(b). In light of the forged bank documents, fictitious entities, corporate shells, and offshore financial accounts used by Ronald in perpetrating this fraud, we have no trouble concluding that the sophisticated means enhancement was properly applied.

Ronald also argues that his sentence is substantively unreasonable, even though it reflects the low end of the applicable Guidelines range. While not presumptively reasonable, *United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008), "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). This is so because

> by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.

---

as he sat through this trial. What a betrayal. How could they?" Later on, counsel defended her client by saying, "[Shawn] was lied to and manipulated by the very people that were supposed to protect him."

6

*Rita v. United States*, 551 U.S. 338, 347 (2007).  Having reviewed Ronald's arguments, we conclude that the sentence imposed by the District Court is reasonable given the scale and sophistication of Ronald's fraudulent scheme, as well as the numerous victims who were harmed.

## CONCLUSION

We have considered all of appellants' arguments and find them to be without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.


FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court