Hillsborough-northern judicial district
No. 2002-416

# The State of New Hampshire

v.

## Antonio DiNapoli

Argued: March 5, 2003
Opinion Issued: May 16, 2003

*Peter W. Heed*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the brief and orally), for the State.

*Gadsby Hannah LLP*, of Boston, Massachusetts (*Evan Slavitt* and *Eric Neyman* on the brief, and *Mr. Neyman* orally), and *Albert E. Scherr*, of Concord, on the brief, for the defendant.

BROCK, C.J. The defendant, Antonio DiNapoli, was convicted by a jury of witness tampering. *See* RSA 641:5 (1996). On appeal he argues that: (1) the Superior Court (*Barry*, J.) should have granted his motion for directed verdict because there was insufficient evidence to prove that the testimony he sought was objectively false; (2) there was insufficient evidence to prove intent; (3) the trial court erroneously admitted certain testimony; (4) the trial court erroneously failed to give a curative instruction following the prosecutor's closing; and (5) the trial court erroneously failed to give the defendant's requested jury instructions. We affirm.

At trial, the State presented evidence of the following facts. In July 2001, the defendant was defending a lawsuit brought by a law firm to collect its fees. The law firm intended to call a former employee of the defendant, Tim Ferris, as a witness. On the evening of the first day of trial, the defendant and Ferris met for dinner at a restaurant in Massachusetts. During the meal, the defendant stated that the law firm was unqualified, and had overcharged and mischarged for its services. He recalled his understanding of the negotiations by which he retained the firm, stating that Ferris was directly involved in negotiating the terms of the firm's engagement. The defendant asked Ferris if he would testify on his behalf regarding the defendant's understanding of events. Ferris was "taken aback," and he demurred, stating that he was busy and had not had enough notice. The defendant offered to pay Ferris $2,000 to $3,000 in cash to compensate him for his time. The defendant also offered Red Sox tickets and future employment. Ferris agreed to call the defendant the next day to discuss whether he would testify.

The next morning, Ferris called the law firm's attorneys to inform them of his meeting with the defendant. The attorneys requested a chambers conference with the trial judge, and the judge declared a mistrial. The defendant was subsequently indicted for one count of witness tampering.

During the criminal trial, Ferris testified that if he had testified as to the defendant's version of events, he would not have been testifying truthfully. He stated that the defendant's characterization that the law firm was unqualified and had overcharged for its services was false. He also testified that he was not involved with the decision to hire the firm or with negotiations regarding their fee arrangements. When asked whether the defendant would have known that the defendant's version of events was not true, Ferris responded, "Probably." The jury convicted the defendant of witness tampering, and this appeal followed.

## I. Sufficiency of the Evidence

The defendant argues that the trial court should have granted his motion for directed verdict because the evidence was insufficient to prove that the proposed testimony was objectively false, and there was insufficient evidence to prove intent. We will assume without deciding that the State had to prove that the testimony the defendant sought to induce was, in fact, false, and consider whether the State presented sufficient evidence to support a finding that the testimony the defendant attempted to induce was false and that he knew it was false.

"To succeed on his motion for a directed verdict, the defendant had to establish that the evidence viewed in its entirety, giving the State the benefit of all reasonable inferences, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged." *State v. Wong*, 138 N.H. 56, 64 (1993) (quotation omitted). "When reviewing the trial court's denial of the directed verdict, we must view the evidence and all reasonable inferences arising therefrom in the manner most favorable to the State." *Id.* (quotation omitted). The question is whether, based upon all the evidence and the reasonable inferences therefrom viewed most favorably to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant acted with the purpose of committing the charged offense. *State v. Laudarowicz*, 142 N.H. 1, 4 (1997). "Because persons rarely explain to others the inner workings of their minds or mental processes, a culpable mental state must, in most cases, as here, be proven by circumstantial evidence." *Id.* at 4 (quotation and brackets omitted). Such evidence must exclude all rational conclusions except guilt. *Id.* at 5. "[T]he jury is entitled to infer the requisite intent from the defendant's conduct in light of all the circumstances in the case." *State v. Fuller*, 147 N.H. 210, 214 (2001).

Considering the evidence and the inferences to be drawn therefrom most favorably to the State, a rational jury could conclude that the testimony the defendant sought to induce was in fact false, and that the defendant acted purposely to induce Ferris to testify to something which

the defendant believed was false. Ferris testified that the scenario the defendant presented to him at dinner was false. Based upon this testimony, a rational jury could conclude that the testimony the defendant sought to induce was in fact false. *See State v. Hodgdon,* 143 N.H. 399, 404 (1999) (jury is free to accept or reject witness's testimony); *State v. Meaney,* 129 N.H. 448, 451 (1987) (jury's role to determine weight and credence to be given evidence at trial).

A rational jury also could have concluded that the defendant knew that the testimony he sought was false. In addition to Ferris' testimony that the defendant's description of events was false, Ferris also testified that a "good portion" of the negotiations were conducted in Italian, and, while the defendant is fluent in Italian, Ferris is not. Based on this testimony, the jury could have inferred that the defendant knew that Ferris had not negotiated the contract with the law firm.

Furthermore, "[c]onduct illuminates intent." *Meaney,* 129 N.H. at 451 (quotation omitted). A rational jury could have inferred that the offer of a relatively large cash payment was evidence that the defendant was intentionally requesting that Ferris testify falsely. Although the defendant asserts that the offer of payment was simply an inducement to testify, not a payment to testify falsely, it was the jury's function to determine the weight and credence to be given the evidence at trial. *Id.* "The jury was free to reject the inferences urged by the defendant." *Id.* The jury could reasonably have concluded that the defendant's intent, when he had dinner with Ferris and offered him future employment, Red Sox tickets and $2,000 to $3,000 in cash to testify to the defendant's version of events, was to induce Ferris to testify to something that the defendant believed was false.

■ Viewing the evidence and all reasonable inferences from it in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of witness tampering. Therefore, there was sufficient evidence to convict the defendant, and the trial court did not err in denying the defendant's motion for a directed verdict.

## II. Evidentiary Issues

The defendant argues that the trial court erred in permitting testimony concerning Ferris' mental state and testimony regarding the practice of compensating lay witnesses. He argues that the testimony was irrelevant and prejudicial, and that he was also prejudiced by the court's failure to give limiting instructions.

As a preliminary matter, the State asserts that the defendant failed to preserve a challenge to the evidence under New Hampshire Rule of Evidence 403. We will assume without deciding that the defendant's objections were sufficient to preserve arguments under both Rules 401 and 403.

The admissibility of evidence is a matter within the trial court's broad discretion, and we will not overturn its determination absent an unsustainable exercise of discretion. *State v. Bashaw*, 147 N.H. 238, 241 (2001); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). The defendant has the burden of demonstrating "that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Lambert*, 147 N.H. at 296 (quotation omitted).

### A. Testimony Regarding Ferris' Reaction to Defendant's Request

■ The defendant challenges the admission of testimony from Ferris and another of the State's witnesses that Ferris was "taken aback" and upset after his dinner conversation with the defendant. He asserts that the testimony was "marginally relevant, but extremely prejudicial."

> Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove his guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial. Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged.

*State v. Jordan*, 148 N.H. 115, 117-18 (2002) (brackets, quotations and citation omitted). The testimony regarding Ferris' reaction to his dinner conversation with the defendant was not emotionally charged and was not the type of evidence that would tend to appeal to a jury's sympathies, arouse its sense of horror, or provoke its instinct to punish. Hence, we cannot conclude that the trial court's exercise of discretion in admitting this testimony was unsustainable.

■ We also conclude that the defendant was not unfairly prejudiced when the court declined his invitation to instruct the jury regarding the

weight to be accorded Ferris' reaction. Upon the defendant's request, the trial court immediately instructed the jury that Ferris' testimony about his reaction to the defendant's request "may not have anything to do at all with the state of the law to the charge against the defendant." The court's decision not to give final jury instructions regarding Ferris' reaction to the defendant was well within its discretion. *See State v. Laurent*, 144 N.H. 517, 521 (1999).

## B. Evidence Regarding Compensating Witnesses

The defendant argues that the court erred in allowing two witnesses, who are attorneys, to testify about their practices and opinions regarding compensating witnesses. He argues that the evidence was irrelevant, confusing and prejudicial, and the court's decision not to issue a curative instruction was prejudicial error.

■ The State had the burden of proving that the defendant acted purposely when he attempted to induce Ferris to testify falsely. *See* RSA 641:5. Evidence establishing that a large cash payment to a lay witness is unusual was relevant to demonstrate that the defendant's intent was to induce Ferris to testify falsely. As such, the testimony was relevant under Rule 401. *See* N.H. R. Ev. 401. We are not persuaded that its probative value was substantially outweighed by the danger of unfair prejudice. *See* N.H. R. Ev. 403. Hence we cannot conclude that the trial court's exercise of discretion in admitting this testimony was unsustainable.

Because the trial court did not err in admitting this evidence, the court's decision not to give curative instructions on the matter was well within its discretion. *See Laurent*, 144 N.H. at 521. The defendant's remaining evidentiary arguments, which cite no authority, fail to demonstrate that the court engaged in an unsustainable exercise of discretion.

## III. State's Closing Argument

The defendant argues that the State improperly stated the burden of proof in its closing argument, and that the trial court erred by not giving the jury a curative instruction. In closing, the prosecutor argued:

> [I]f you believe that [the defendant] was only trying to enlist Tim Ferris as a witness in the case, that his offer of money was just to cover his expenses . . . that the conversation about the consulting work . . . and Red Sox tickets was just a coincidence, then you should find him not guilty. But if you . . . believe that he was trying to secure his favorable testimony, that he offered him cash . . . for that testimony, further offered him consulting

employment as a further inducement, then you should find [the defendant] guilty.

The defendant objected and requested a curative instruction; the trial court denied the request.

"A prosecutor ... has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge the jury to draw inferences of guilt from the evidence." *State v. Vandebogart,* 139 N.H. 145, 160 (1994) (quotation omitted). When a prosecutor's statement is not improper, it does not constitute prosecutorial misconduct. *State v. Merritt,* 143 N.H. 714, 721 (1999).

■ The prosecutor's comments merely summarized the evidence and explained the possible inferences the jury could draw from it. As such, the remarks were not improper, and the prosecutor did not engage in misconduct. *See id.* The trial court's decision not to give a curative instruction was a sustainable exercise of discretion.

The defendant asserts that this issue must be analyzed under factors set forth in *State v. Haines,* 142 N.H. 692, 701 (1998). Having concluded that the prosecutor's remarks did not amount to misconduct, we decline the defendant's invitation to consider whether the *Haines* factors apply where, as here, the defendant has requested a curative instruction rather than a new trial.

Because the defendant did not raise due process issues below, we decline to address them on appeal. *See State v. Mansfield,* 134 N.H. 287, 288-89 (1991).

*IV. Jury Instructions*

Finally, the defendant asserts that the trial court erred in denying requested jury instructions regarding: (1) the legality of preparing and reimbursing witnesses; (2) the intent element of the witness tampering statute; and (3) the fact that lawyers, but not clients, are bound by rules of ethics.

"The purpose of jury instructions is to explain the rules of law applicable to a case." *State v. Blackstock,* 147 N.H. 791, 798 (2002). "[T]he trial court has discretion to determine whether or not a particular instruction is necessary to assist the jury in reaching a verdict." *State v. Dale,* 146 N.H. 286, 289 (2001) (quotation omitted). We review the denial of a proposed jury instruction in the context of the entire charge and all evidence presented at trial to determine whether the trial court adequately stated the relevant law. *Blackstock,* 147 N.H. at 798. "We will not reverse a conviction unless the instructions did not fairly cover the issues of law in the case." *Id.* (quotation omitted).

At issue on appeal are three of the defendant's requested jury instructions:

    ■ It is legal in New Hampshire to speak to witnesses, to meet and prepare witnesses for trial, and to reimburse witnesses for their expenses and lost wages for their participation at trial. The law does not limit the amount you can reimburse a witness. This payment can be made in cash or check.

    ■ Witness tampering is a crime based on the attempt to induce false testimony. The section focuses upon the defendant's intent, rather than on the intentions, understandings, or actions of anyone else, including the person that is said to have been tampered with. This means that if [the defendant] did not have the intent—that is, the specific purpose—to tamper with a witness, it does not matter at all that the witness believes he was tampered with, or draws any conclusions or makes any assumption, or tells someone else how he understood the conversation.

    Put another way, it is not the impact or result that is the focus of this charge, but rather the intent or purpose of the defendant. If you do not find beyond a reasonable doubt that [the defendant] intended to tamper with Mr. Ferris, you are obliged to find [the defendant] not guilty.

    ■ Lawyers are bound by ethical rules, clients are not. [The defendant] is not bound by a lawyer's ethical rules. It is not a crime for [the defendant] to go against a lawyer's ethical rules.

■ ■ The court concluded that the standard intent instruction "more than amply" covered the defendant's second request. We agree. In regard to the first and third requested instructions, the court declined to give them because it did not want to comment on the evidence in the case. Trial judges generally do not comment on the evidence in their jury instructions. *See State v. King*, 136 N.H. 674, 677 (1993). It was not erroneous for the court to conclude that the defendant's jury instructions regarding witness preparation and compensation and the applicability of ethics rules would have entailed a comment on the evidence; thus it was not error for the court to decline to give them. *Cf. Johnston v. Lynch*, 133 N.H. 79, 90 (1990) (holding that court did not err in declining to give portion of requested instruction that involved comment on the evidence). In sum, we find that the jury instructions fairly and adequately covered

the issues of law in this case. Thus, we conclude that the court did not err in instructing the jury as it did.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.