Belknap
No. 2006-908

THE STATE OF NEW HAMPSHIRE

v.

DOUGLAS JENOT

Argued: November 19, 2008
Opinion Issued: December 18, 2008

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. After a jury trial in the Superior Court (*Smukler*, J.), the defendant, Douglas Jenot, was convicted of aggravated felonious sexual assault (AFSA) and theft by unauthorized taking. *See* RSA 632-A:2, I (Supp. 2008); RSA 637:3, I (2007). He appeals his convictions, arguing that the loss of the transcript from the first day of trial requires reversal. He also argues that the trial court erred in barring him from presenting a portion of his testimony pursuant to New Hampshire Rule of Evidence 403. We affirm.

The facts as adduced at trial are largely undisputed. On April 22, 2004, around 4:00 a.m., the defendant, along with his cousin, Stephen Goupil, forcibly entered the victim's apartment in Laconia. Once inside, they hit and punched the victim. Goupil also held a knife to her throat to make her stop screaming. Goupil tied a bra around her head as a blindfold and gagged her. After both men searched her apartment, Goupil sexually assaulted her. He then told the defendant it was his turn. The defendant penetrated the victim twice. The defendant and the victim both testified that most of the events took place at Goupil's direction.

At trial, the defendant's attorney asked him why he would do what Goupil told him to do. The defendant responded, "Well, something that happened between us when I was younger, and . . . I was afraid of him saying something about it to everybody. It's quite embarrassing." When his

attorney asked him what had happened, the State objected. In an offer of proof, the defense stated that the defendant would testify that Goupil had sexually assaulted him twice when they were younger, "and he's pretty much held this whole thing over his head his entire life." The State renewed its objection on the ground that it was not relevant and was overly prejudicial because "it's a straight play for pure sympathy with the jury."

The trial court excluded the testimony because its prejudicial effect substantially outweighed its probative value. The court reasoned that "he still has the conscious object [needed for accomplice liability] of assisting the crime to succeed even if . . . emotionally he doesn't like it." Any argument that he was doing it against his will, the court reasoned, would go to duress, "[a]nd [that] defense only applies with threat of imminent bodily injury or death . . . ."

After the defendant appealed his conviction, the trial court discovered that the audio recording for the first day of trial did not contain any of that day's proceedings. Attempts to retrieve or reconstruct the data from the court's computer were unsuccessful. The trial court notified this court of the problem and we asked the parties to submit memoranda discussing the appropriate remedy. We then ordered the trial court to compile a reconstructed record in lieu of an official transcript. The reconstructed record contains the testimony of witnesses from Goupil's trial, the court monitor's log notes, the attorneys' trial notes, and the transcript from the reconstruction hearing.

On appeal, the defendant makes two arguments: (1) the loss of the first day's record requires a new trial; and (2) the court erred in excluding evidence that Goupil had sexually assaulted the defendant when they were younger.

We first address the defendant's argument concerning the incomplete record. He argues that we should adopt the rule in *United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977), where the Fifth Circuit held that, when a criminal defendant is represented on appeal by counsel other than the attorney at trial and a substantial and significant portion of the record is absent, a new trial is required. *Selva*, 559 F.2d. at 1306. The defendant argues that because he obtained new appellate counsel, he was denied the ability to review the record for plain error. The State responds that *Selva* represents a minority view among federal circuits and we should adopt the rule propounded by virtually every other circuit, *i.e.*, that the defendant must show specific prejudice to his appeal resulting from the incompleteness of the record.

We agree with the State. We find the reasoning of the First Circuit to be persuasive:

> [W]e recognize that an adequate record is of particular importance when new counsel is retained on appeal. However, the mere fact that [the defendant] has retained new counsel for his appeal does not by itself warrant reversal nor in any way relieve [him] of his burden to demonstrate "specific prejudice." To hold otherwise would create the perverse incentive of encouraging defendants to dismiss trial counsel and seek new appellate counsel whenever questions arise over the sufficiency of a trial transcript.

*United States v. Smith,* 292 F.3d 90, 98 (1st Cir. 2002) (quotations, citations and brackets omitted), *cert. denied,* 538 U.S. 933 (2003). Indeed, most federal circuits disagree with *Selva. See, e.g., United States v. Weisser,* 417 F.3d 336, 342 (2d Cir.), *cert. denied,* 546 U.S. 971 (2005); *United States v. Haber,* 251 F.3d 881, 890 (10th Cir.), *cert. denied,* 534 U.S. 915 (2001); *United States v. Huggins,* 191 F.3d 532, 537 (4th Cir. 1999), *cert. denied,* 529 U.S. 1112 (2000); *United States v. Kelly,* 167 F.3d 436, 438 (8th Cir. 1999); *United States v. Carrazana,* 70 F.3d 1339, 1343-44 (D.C. Cir. 1995), *cert. denied,* 517 U.S. 1147 (1996); *United States v. Sierra,* 981 F.2d 123, 126 (3d Cir. 1992), *cert. denied,* 508 U.S. 967 (1993); *United States v. Antoine,* 906 F.2d 1379, 1381 (9th Cir.), *cert. denied,* 498 U.S. 963 (1990); *United States v. Gallo,* 763 F.2d 1504, 1530 (6th Cir. 1985), *cert. denied,* 475 U.S. 1017 (1986).

██ Only one of the issues the defendant raised in his notice of appeal pertained to events on the first day of trial — whether he renewed his motion for a change of venue at *voir dire.* The issue of pretrial publicity and a change of venue was first addressed in chambers before *voir dire.* The parties and trial judge decided to try to impanel a jury, but allowed the defendant to renew his objection at *voir dire* if unable to do so. To obtain a change of venue, the defendant must prove that the jury was so tainted by pretrial publicity that he could not obtain a fair and impartial trial in the county in question. *State v. Sullivan,* 121 N.H. 301, 303 (1981). In an affidavit submitted by the defendant's trial attorney, he stated he did not renew the motion. The affidavit did not say that defense counsel believed that there was a meritorious issue; thus the failure to renew the motion demonstrates defense counsel's apparent conclusion that he had obtained an impartial jury. *See State v. Smart,* 136 N.H. 639, 652, *cert. denied,* 510 U.S. 517 (1993). The defendant, therefore, has not shown any actual prejudice to his appeal.

We now turn to the defendant's second argument, that the court erred in excluding his proffered testimony. The defendant argues that his proffered testimony was admissible under New Hampshire Rules of Evidence 401 and 403. The admissibility of evidence is a matter within the trial court's

broad discretion. *State v. DiNapoli*, 149 N.H. 514, 518 (2003). We will not overturn the trial court's rulings on admissibility of evidence pursuant to Rules 401 and 403 absent an unsustainable exercise of discretion. *State v. Hall*, 148 N.H. 671, 675 (2002). The defendant has the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Brum*, 155 N.H. 408, 413 (2007). We view the evidence in the light most favorable to the prevailing party, and apply the rules of logical relevance. *State v. Stearns*, 130 N.H. 475, 486 (1988).

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.H. R. Ev. 403.

> Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case. Unfair prejudice is not, of course, mere detriment to [the objecting party's case], in which sense all evidence offered . . . is meant to be prejudicial. Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision . . . on some improper basis, commonly one that is emotionally charged.

*DiNapoli*, 149 N.H. at 518 (quotation omitted).

The defendant argues that the trial court incorrectly weighed the probative value of his proffered testimony. In weighing the evidence, the trial court stated: "[T]he closest thing I could come to in terms of thinking about probative value was the common law defense of duress . . . . In this case, given the offer of proof, there was no imminent threat of death or serious bodily injury . . . ." The trial court therefore concluded the evidence had limited probative value. The defendant then argued that the evidence was probative as to his purpose as an accomplice. The trial judge stated: "The fact . . . he was afraid or under the influence of the principal . . . how does that affect — I mean, he still has the conscious object of assisting the crime to succeed even if . . . emotionally he doesn't like it."

The defendant argues that the trial court analyzed the probative value of his proffered testimony as to a duress defense but not in relation to accomplice liability. In particular, he argues that the evidence would show

that he did not have the purpose to make the crime succeed. Rather, his only purpose was to avoid revelation of an embarrassing incident in his relationship with Goupil. Whether or not the crime succeeded, the defendant argues, was irrelevant to his actions. The State responds that any probative value the evidence may have had was substantially outweighed by its undue prejudice. Furthermore, the State argues that regardless of the defendant's motive for aiding Goupil, he still had the purpose of facilitating the commission of the offense.

██ We reject the defendant's argument that his motive to avoid shame means that he did not act with the purpose of making the crime succeed. *See* RSA 626:8, III (2007) (accomplice liability requires the defendant have the purpose of promoting or facilitating the commission of the offense). "A person acts purposely . . . when his conscious object is to cause the result or engage in the conduct that comprises the element." RSA 626:2, II(a) (2007). The evidence adduced at trial supports the conclusion that the defendant acted with the purpose of penetrating the victim. He took off his clothes, got onto the bed with her, and penetrated her twice. Regardless of why he acted, he had the conscious object of penetrating the victim.

██ ██ If the defendant's argument prevailed, it would create a lesser standard for the defense of duress in cases of accomplice liability. As the trial court indicated, the common law defense of duress applies only "where the actor [is] under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law." *State v. Daoud*, 141 N.H. 142, 147 (1996) (quotation omitted). The threat of disclosing embarrassing information can certainly place considerable pressure on individuals. The discomfort created in such situations, however great, does not excuse an actor's unlawful actions. The evidence was, therefore, of limited probative value.

██ ██ Its limited probative value was substantially outweighed by its prejudicial potential. We have held that evidence is prejudicial if it distracts the jury and results in time-consuming mini-trials. *Brum*, 155 N.H. at 413; see, e.g., *State v. Woodard*, 146 N.H. 221, 224-25 (2001) (evidence that defendant had engaged in a homosexual relationship had limited probative value as to the facts of the case and was substantially outweighed by the danger of unfair prejudice because of potential juror bias against homosexuals). Here, testimony that Goupil sexually assaulted the defendant would have an undue tendency to create sympathy with the jury and "induce a decision . . . on some improper basis, . . . one that is emotionally charged." *DiNapoli*, 149 N.H. at 518 (quotation omitted). Jurors could have been distracted by the evidence and based their decision upon the

defendant's status as a victim of the principal rather than the facts adduced and instructions on the law. We therefore conclude that the trial court did not unsustainably exercise its discretion in excluding the testimony.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.