Rockingham
No. 2009-508

## THE STATE OF NEW HAMPSHIRE

v.

## JEFFREY MARSHALL

Argued: May 5, 2011
Opinion Issued: November 3, 2011

*Michael A. Delaney*, attorney general (*Elizabeth C. Woodcock*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. The defendant, Jeffrey Marshall, appeals his convictions in the Superior Court (*Nadeau*, J.) of dispensing a controlled drug — death resulting, *see* RSA 318-B:26, IX (2004), and receiving stolen property, *see* RSA 637:7 (2007). We affirm.

I

The record supports the following. On October 21, 2007, Anthony Fosher, several other adults, and the defendant were together at the Comfort Inn in Portsmouth to watch a Red Sox game. Several of the adults were drinking alcohol; Fosher had a case of beer and was described by others as very intoxicated. At some point during the evening, Fosher began asking whether anyone could get cocaine for him. The defendant made some calls in an effort to get the cocaine, and Fosher gave him money to purchase it. The defendant left to purchase cocaine, but later called to say that he could only get heroin. Fosher indicated that he wanted the heroin, and continued to drink alcohol. The defendant returned and gave Fosher a bag of heroin. Fosher snorted an amount of heroin, as did some of the others, before passing out at some point.

The defendant did not provide Fosher with any of the alcohol that he drank that night. There was testimony, however, that, when giving Fosher the heroin, the defendant told another of the adults that she should "watch out for" and "[l]ook over" Fosher, because Fosher could die from consuming the entire bag of heroin. Due to his intoxicated state, Fosher had difficulty in breaking up the heroin into lines; the defendant commented that the lines looked "really big."

At 12:42 p.m. the next day, the defendant's girlfriend called 911, as Fosher was non-responsive. She took money out of Fosher's pocket and gave it to the defendant, who also took a moneybag and a bag of leftover heroin. He then left the Comfort Inn before police and paramedics arrived. Fosher was pronounced dead at the hospital. Three days later, the police arrested the defendant.

The defendant was indicted by a Rockingham County grand jury on charges of receiving stolen property and dispensing a controlled drug — death resulting. At the close of all the evidence, he unsuccessfully moved to dismiss the drug charge, arguing that the State had introduced insufficient evidence to prove that the heroin caused Fosher's death as required under RSA 318-B:26, IX. Subsequent to the jury finding him guilty on both charges, the defendant unsuccessfully moved to set aside the verdict, again arguing an insufficiency of the evidence, and arguing that the jury verdict was against the weight of the evidence as to causation. This appeal followed.

On appeal, the defendant argues that the trial court erred in: (1) denying his pre-trial motion to dismiss the charge of dispensing a controlled drug — death resulting because the indictment failed to allege all of the elements of the offense; (2) denying his motion to dismiss because the State introduced insufficient evidence; and (3) denying his motion to set aside the verdict because it was against the weight of the evidence. Further, he contends that both of his convictions must be vacated because the record of a necessary portion of his trial was lost and could not be reconstructed. We address his arguments in turn.

## II

The defendant first contends that the trial court erred in denying his pre-trial motion to dismiss the charge of dispensing a controlled drug — death resulting. Citing Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution, he contends that "[t]hese issues implicate [his] constitutional rights to due process and a grand jury indictment that alleges all of the elements of the charged offense." Because the Grand Jury Clause of the Fifth Amendment has not been incorporated into the Fourteenth Amendment, and, thus, does not apply to the states, *Gautt v. Lewis*, 489 F.3d 993, 1003 n.10 (9th Cir. 2007); *see McDonald v. Chicago*, 130 S. Ct. 3020, 3034-35, 3035 n.13 (2010) (citing cases), we address only his arguments under the State Constitution. Because this is a question of constitutional law and statutory interpretation, our review is *de novo. In re Alex C.*, 158 N.H. 525, 527 (2009).

Part I, Article 15 of the State Constitution provides that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him." *See also* RSA 601:4 (2001) ("An indictment, information or complaint is sufficient if it sets forth the offense fully, plainly, substantially and formally, and it is not necessary to set forth therein the special statute, bylaw or ordinance on which it is founded."). To meet this constitutional standard, an indictment must inform a defendant of the offense with which he is charged with sufficient specificity to enable him to prepare for trial and at the same time protect him from being put in jeopardy a second time for the same offense. *See Alex C.*, 158 N.H. at 527. It is not enough merely to state the crime with which a defendant is being charged; the indictment must include the elements of the offense with sufficient allegations to identify the offense in fact. *See id.* Once a crime has been identified with factual specificity, however, there is no additional requirement that the acts by which a defendant may have committed the offense be identified. *State v. MacElman*, 154 N.H. 304, 313 (2006). The question is not whether the indictment could have been more

certain and comprehensive, but whether it contains the elements of the offense and enough facts to warn a defendant of the specific charges against him. *Id.*

RSA 318-B:26, IX reads:

> Any person who manufactures, sells, or dispenses . . . any . . . controlled drug classified in schedules I or II, or any controlled drug analog thereof, in violation of RSA 318-B:2, I or I-a, is strictly liable for a death which results from the injection, inhalation or ingestion of that substance, and may be sentenced to imprisonment for life or for such term as the court may order. For purposes of this section, the person's act of manufacturing, dispensing, or selling a substance is the cause of a death when:
>
> (a) The injection, inhalation or ingestion of the substance is an antecedent but for which the death would not have occurred; and
>
> (b) The death was not:
>
> > (1) Too remote in its occurrence as to have just bearing on the person's liability; or
> >
> > (2) Too dependent upon conduct of another person which was unrelated to the injection, inhalation or ingestion of the substance or its effect, as to have a just bearing on the person's liability. It shall not be a defense to a prosecution under this section that the decedent contributed to his own death by his purposeful, knowing, reckless or negligent injection, inhalation or ingestion of the substance or by his consenting to the administration of the substance by another. Nothing in this section shall be construed to preclude or limit any prosecution for homicide. A conviction arising under this section shall not merge with a conviction of one as a drug enterprise leader or for any other offense defined in this chapter.

In this case, for the indictment to have been constitutionally sufficient, it must have communicated to the defendant that he was charged with dispensing a proscribed controlled drug and a death resulted from injecting, inhaling, or ingesting that controlled drug. Here, the indictment did just that, as it read, in pertinent part, that the defendant "committed the crime of Dispensing Controlled Drug — Death Resulting . . . in that: 1. Jeffrey E. Marshall knowingly, 2. dispensed a quantity of the controlled drug heroin to Anthony Fosher, 3. and, subsequently, said heroin was inhaled and/or ingested by, Anthony Fosher, 4. resulting in his death, contrary to the form of the Statute in such case made and provided . . . ."

The defendant argues that the indictment was insufficient because it did not allege that Fosher's inhalation or ingestion of the heroin was "an antecedent but for which" he would not have died or that his death was not "too remote in its occurrence to have just bearing on [the defendant's] liability" or "too dependent upon conduct of another person . . . as to have a just bearing on the [the defendant's] liability." RSA 318-B:26, IX(a), (b). The defendant contends that RSA 318-B:26, IX(a) and (b) constitute elements of the crime that had to be alleged in the indictment. We disagree.

■ To violate RSA 318-B:26, IX, a defendant must not only engage in certain conduct (manufacturing, selling or dispensing a controlled drug), but also must cause a specified result to occur (the victim's death from injecting, inhaling or ingesting the controlled drug). For criminal liability to attach in crimes such as this, the defendant's conduct must be both the "but-for" cause and the "proximate" cause of the prohibited result. *See* 1 W. LaFave, Substantive Criminal Law § 6.4(a), at 466 (2d ed. 2003); *see also State v. Lamprey*, 149 N.H. 364, 366 (2003). RSA 318-B:26, IX(a) sets forth the Model Penal Code's formulation of "but-for" causation. Model Penal Code § 2.03(1)(a), at 253 (1985). RSA 318-B:26, IX(b) sets forth one of the Model Penal Code's formulations of "proximate" causation. *See id.* § 2.03(2)(b), (3)(b).

■ Regardless of whether a criminal statute specifically sets forth tests for legal and proximate causation, "the law of causation — *i.e.*, the rules that define when a defendant's conduct will be deemed to have 'caused' a particular result for purposes of the criminal law — applies to all offenses that require proof of causation, from first-degree murder down to the most minor misdemeanor." *Rogers v. State*, 232 P.3d 1226, 1235 (Alaska Ct. App. 2010); *see also Lamprey*, 149 N.H. at 366; *State v. Seymour*, 140 N.H. 736, 746 (1996); *State v. Soucy*, 139 N.H. 349, 353 (1995) ("Causation is an element of the crime of manslaughter. The State must prove, beyond a reasonable doubt, the existence of a causal link from the criminal act to the death."). Thus, properly viewed, RSA 318-B:26, IX(a) and (b) are not additional "elements" to be proved, but rather explain further the kind of causation required before criminal liability may attach under this statute. RSA 318-B:26, IX(a) and (b) constitute the law to be applied when determining whether the element of causation, that is, "death resulting," has been met.

■ We reject the defendant's assertion that for the element of causation to be set forth in an indictment sufficiently, it must be fully explained. We have never held that an indictment for a results-defined crime was insufficient because it failed to set forth fully the applicable law of

causation. *See State v. Darcy*, 121 N.H. 220, 223 (1981) (manslaughter indictment alleging defendant knowingly caused death of victim was sufficient). Similarly, just as an indictment is sufficient to charge accomplice liability if it merely states that a defendant acted "in concert with" another, *see State v. Winward*, 161 N.H. 533, 538-39 (2011),[1] so too is an indictment under RSA 318-B:26, IX sufficient if it states that the victim's death resulted from the victim's ingestion of the controlled drug that the defendant dispensed. In the indictment at issue, the use of the phrase "resulting in" apprised the defendant that causation is an element of the offense.

However, this does not mean that to prove causation, the State need only prove that the defendant's act resulted in the victim's death. Rather, as the State concedes, to establish causation, the State must prove the requirements for causation set forth in RSA 318-B:26, IX(a) and (b) beyond a reasonable doubt. Again, this is similar to establishing liability in the accomplice context. While to *charge* a defendant with accomplice liability an indictment, at most, need only allege that he was the principal or acted "in concert" with another, to *prove* accomplice liability the State must prove, beyond a reasonable doubt, that: (1) the accomplice had the purpose to make the crime succeed; (2) the accomplice's acts solicited, aided or attempted to aid another in committing the offense; and (3) the accomplice shared the requisite mental state for the offense. *State v. Duran*, 158 N.H. 146, 151 (2008); *see* RSA 626:8, III, IV (2007) (setting forth requirements for accomplice liability).

The defendant asserts that "[e]ven if RSA 318-B:26 is viewed as enacting a sentencing enhancement, the elements essential for invoking the enhancement must be charged in the indictment." His argument is based upon a misreading of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which our decision in *State v. Ouellette*, 145 N.H. 489, 491 (2000), may have engendered.

In *Apprendi*, 530 U.S. at 490, the United States Supreme Court held that under the Sixth Amendment to the Federal Constitution "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," other than the fact of a prior conviction, "must be submitted to a jury, and proved beyond a reasonable doubt." In *Ouellette*, 145 N.H. at 491, we erred when we stated that in *Apprendi*, the United States Supreme Court held that sentencing factors, other than prior criminal convictions, had to be alleged in an indictment. This was not, in fact, the holding of

---

[1] Even the words "in concert with" are not always required. An indictment that charges a defendant as a principal necessarily also alleges accomplice liability. *Winward*, 161 N.H. at 538-39; *see State v. Barton*, 142 N.H. 391, 395 (1997).

*Apprendi*, nor could it have been given that the defendant in that case did not challenge his sentence based upon the omission of the sentence-enhancing factor from his indictment. *See Apprendi*, 530 U.S. at 477 n.3; *see also* 5 W. LAFAVE & A., CRIMINAL PROCEDURE § 19.2(e), at 239 (3d ed. 2007) (observing that challenge to indictment was not before *Apprendi* court).

Although *Apprendi* did not involve a challenge to an indictment, relying upon *Apprendi*'s reasoning, lower courts have ruled that certain sentencing factors must be alleged in an indictment. *See* LAFAVE, *supra* § 19.3(a), at 252 (noting that federal courts uniformly have held that capital-sentence aggravating factors must be charged in indictment). *But cf. Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) (sentence enhancement factors related to recidivism need not be alleged in indictment); *Apprendi*, 530 U.S. at 489-90 (criticizing *Almendarez-Torres*, but declining to overrule it). Whether this principle applies to other sentence enhancement factors or facts related thereto is an open question. *See* THE CONSTITUTION PROJECT, PRINCIPLES FOR THE DESIGN AND REFORM OF SENTENCING SYSTEMS: A BACKGROUND REPORT, http://www.constitutionproject.org/pdf/34.pdf, at 52 n.107 (observing that while "it is clear that 'elements' of a federal crime must be alleged in the indictment, . . . it is so far unclear whether these new element-like sentencing factors must be alleged in the indictment"). As observed previously, however, the Federal Grand Jury Clause does not apply to the states; thus, we need not weigh in on this ongoing debate.

It is also an open question whether, under the State Constitution, any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be alleged in an indictment. Although in *Ouellette* and in *State v. Polk*, 155 N.H. 585, 590 (2007), we intimated that this was the law under the State Constitution, we did so only in dicta. In *Ouellette*, the issue was *not* whether a particular sentencing enhancement factor had to be alleged in an indictment, but whether an indictment was required *at all. Ouellette*, 145 N.H. at 490. In *Polk*, the issue was whether the complaint was insufficient because it did not allege a culpable mental state with respect to the element of attempting to elude pursuit by a law enforcement officer by increasing speed. *Polk*, 155 N.H. at 586. We disagreed that this was a material element that required proof of a culpable mental state. *Id.* at 588. While the defendant asserted that our decision violated the principle that any fact, other than a prior conviction, must be alleged in an indictment, we disagreed, noting that the complaint against the defendant stated the aggravating factor. *Id.* at 590. Our reference to *Ouellette* in *Polk* was, thus, merely dicta. *See id.*

■ Nevertheless, for the purposes of this appeal, we will assume, without deciding, that the State Constitution requires any fact, other than a prior conviction, to be alleged in an indictment. Here, however, this rule was not violated. The assumed enhancement factor — that the heroin dispensed by the defendant caused Fosher's death — was charged in the indictment, submitted to the jury, and found to exist by proof beyond a reasonable doubt. Under these circumstances, therefore, we conclude that the indictment against the defendant was not insufficient under the State Constitution.

### III

The defendant next contends that the trial court erred in denying his motion to dismiss at the close of all the evidence because the State introduced insufficient evidence. Specifically, he argues that the State failed to meet its burden of proving beyond a reasonable doubt "that the death was not too dependent on Fosher's alcohol consumption as to have a just bearing on Marshall's liability." He continues, "Under the proper interpretation of [RSA 318-B:26, IX], the evidence here was insufficient to support a finding that Fosher's ingestion of the heroin was the cause of his death pursuant to [the statute] in that his death was too dependent on his alcohol consumption."

■ Our standard of review of the trial court's denial of the defendant's motion to dismiss based upon the sufficiency of the evidence is well established.

> To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation.

*State v. Flodin*, 159 N.H. 358, 362 (2009) (quotation omitted). Resolution of this issue requires our interpretation of RSA 318-B:26, IX. The interpretation of a statute is a question of law, which we review *de novo*. *State v. Rivera*, 162 N.H. 182, 185 (2011).

> In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute

considered as a whole. When interpreting statutes, we look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. . . . We will neither consider what the legislature might have said nor add words that it did not see fit to include. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent.

*State v. Dodds*, 159 N.H. 239, 244 (2009) (citations omitted); *cf.* RSA 625:3 (2007) ("All provisions of [the Criminal Code] shall be construed according to the fair import of their terms and to promote justice.").

RSA 318-B:26, IX provides that a person who dispenses heroin is *strictly liable* for a death that results from the inhalation or ingestion of that drug. As previously noted, paragraph IX also provides, in subparagraphs IX(a), IX(b)(1), and IX(b)(2), language explaining the causation element of the offense, "death resulting." Specifically, and as relevant to the circumstances of this case, subparagraph IX(a) provides that the defendant's act of dispensing the heroin is the cause of death when the "inhalation or ingestion of the [heroin] is an antecedent but for which [Fosher's] death would not have occurred." As relevant to the circumstances of this case, subparagraph IX(b)(1) provides that the defendant's act of dispensing the heroin is the cause of death when "[t]he death was not . . . [t]oo remote in its occurrence as to have just bearing on the [defendant's] liability." Because the defendant does not now contend that the evidence was insufficient to satisfy these two subparagraphs, we need not further address them.

As relevant to the circumstances of this case, subparagraph IX(b)(2) provides, in pertinent part, that the defendant's act of dispensing the heroin is the cause of death when "[t]he death was not . . . [t]oo dependent upon conduct of another person which was unrelated to the . . . inhalation or ingestion of the [heroin] or its effect, as to have a just bearing on the [defendant's] liability." We note that neither party questions whether the phrase "of another person" in subparagraph IX(b)(2) includes the decedent, or if it is intended to refer only to a third party, other than the defendant and the decedent. Consequently, we assume, without deciding, that the "of another person" language in subparagraph IX(b)(2) may refer to the decedent.

The defendant argues that the State failed to present sufficient evidence that Fosher's death was not "too dependent" upon Fosher's own consumption of alcohol as to have a just bearing on the defendant's liability. *See* RSA 318-B:26, IX(b)(2). For the "too dependent" exception to the strict liability of RSA 318-B:26, IX to apply in this case, however, Fosher's death must

have been too dependent upon his own conduct, *and* that conduct must have been *unrelated* to the inhalation or ingestion of the heroin or the *effect* of the heroin, as to have a just bearing on the defendant's liability. *See State in Interest of A.J.*, 556 A.2d 1283, 1289-90 (N.J. Super. Ct. App. Div. 1989) (construing N.J. STAT. ANN. § 2C:35-9b(2)(b), containing virtually identical language to RSA 318-B:26, IX(b)(2)). Construing the language of the statute according to its plain and ordinary meaning, the jury could have found that Fosher's alcohol consumption *was* related to the *effect* of the heroin, which he inhaled or ingested. *See, e.g.,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1916 (unabridged ed. 2002) (definition of "related" includes "having relationship: connected by reason of an established or discoverable relation"), 2507 (definition of "unrelated" includes "discrete, disjoined, separate"). Consequently, the jury could have found that the "too dependent" exception did not apply in this case.

Jennie Duval, M.D., the New Hampshire Deputy Chief Medical Examiner, performed the autopsy on Fosher's body and determined that his "death was the result of the toxic effects of heroin and [alcohol]." She testified: "The heroin by itself is probably sufficient to explain [Fosher's] death, then add a little bit of alcohol, and it's that much more compelling." She testified that both substances are central nervous system depressants, which suppress brain activity and, in turn, a person's "drive to breathe." She further testified that Fosher's inadequate breathing led to brain damage, coma and, ultimately, death. David Nierenberg, M.D., the defense's expert in clinical pharmacology and toxicology, testified that the combination of alcohol and heroin causes central nervous system depression, which entails grogginess, sleepiness, and eventual sedation and slow breathing. He further testified that introducing any amount of heroin to a patient who is already intoxicated with alcohol dramatically increases the risk of death. A witness testified that, on the morning he died, Fosher was purple and gasping for air.

Dr. Nierenberg concurred with Dr. Duval's opinion that Fosher died from the interaction of heroin and alcohol. Neither expert, however, was able to conclusively determine that the heroin alone caused Fosher's death. Dr. Duval testified:

> I can't measure the contribution of the alcohol. I think, although unlikely, it's possible that heroin by itself, he might be alive. Certainly the alcohol by itself, he would be alive.

Dr. Nierenberg testified, "[I]t is extremely unlikely, extremely unlikely that he would have died from that dose of heroin by itself, and it required the alcohol as well to produce a fatal outcome."

■ In sum, the defendant has conceded that the State introduced sufficient evidence to satisfy subparagraph IX(a) of the statute, and made no argument concerning subparagraph IX(b)(1). Based on our construction of subparagraph IX(b)(2), the jury could have found that the "too dependent" exception of the statute did not apply in this case because Fosher's consumption of alcohol was *related* to the *effect* of the heroin, in that the consumed alcohol and the heroin worked together to cause his inadequate breathing that precipitated his death. Given our interpretation of the statute, and regardless of the precise role that Fosher's consumption of alcohol played in his death, we cannot say that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found that Fosher's death resulted from his consumption of alcohol and the related effect of his heroin ingestion. Consequently, a rational juror could have found that the defendant's act of dispensing heroin to Fosher caused his death. Of course, if the legislature did not intend this interpretation of RSA 318-B:26, IX, it is free to amend the statute as it sees fit. *See, e.g., State v. McKeown,* 159 N.H. 434, 438 (2009).

## IV

■ ■ Next, the defendant contends that the trial court erred in denying his motion to set aside the verdict, because it was against the weight of the evidence. Specifically, he argues that the evidence was insufficient to prove that the heroin was the cause of Fosher's death, so the jury's "verdict was against the weight of the evidence as to this causation element."

> Although a verdict may be supported by sufficient evidence, a trial court may nevertheless conclude that the judgment is against the weight of the evidence. The weight of the evidence is a somewhat more subjective concept than that of sufficiency. The weight given to any evidence depends upon the particular circumstances and is generally not relevant to the question of sufficiency. The weight of the evidence is its weight in probative value, not the quantity or amount of evidence. It is not determined by mathematics, but depends on its effect in inducing belief. It is basically a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other. Thus, in contrast to sufficiency where we determine whether a rational juror could have found guilt, a verdict conclusively against the weight of the evidence is one no reasonable jury could return.

. . . . . .

   . . . [T]he jury verdict must be an unreasonable one before the trial court may set it aside. Thus, the trial court should exercise its discretion with caution and invoke its power to grant a new trial only in exceptional cases in which the evidence preponderates heavily against the verdict and where a miscarriage of justice may have resulted. The trial court should not disturb the jury's findings unless the jury clearly failed to give the evidence its proper weight.

   Because the trial court has greater discretion when ruling upon a motion to set aside the verdict as against the weight of the evidence, our scope of review of such a decision is narrower. We will uphold the trial court's decision unless it was made without evidence or constituted an unsustainable exercise of discretion. . . . Whether we, sitting as trial judges, would have reached the same or a different result is immaterial. In the doubtful cases we should defer to the trial court's judgment.

*State v. Spinale,* 156 N.H. 456, 465-66 (2007) (quotations, citations, brackets, ellipses, and emphases omitted).

We have already determined that a rational juror could have found that the defendant's act of dispensing heroin to Fosher caused his death in this case. The trial court instructed the jury by defining the crime of dispensing a controlled drug with death resulting; the defendant did not object to those instructions, nor has he argued on appeal that the instructions were incorrect. We assume, without deciding, that the jury instructions were correct, and we assume the jury followed the trial court's instructions. *See State v. Silva,* 158 N.H. 96, 100 (2008), *habeas corpus denied, Silva v. Warden,* No. 09-CV-388-JD, 2010 WL 987026 (D.N.H. Mar. 17, 2010). We cannot say that the jury's determination of guilt in this case was a verdict that no reasonable jury could return. Consequently, we cannot say that the trial court's denial of the defendant's motion was an unsustainable exercise of discretion.

## V

The defendant next contends that both of his convictions must be vacated, and his case remanded for a new trial, because the record of a necessary portion of his trial was lost and could not be reconstructed. Citing Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution, he contends that

"[t]o do otherwise prejudices [his] ability to perfect his appeal in violation of his constitutional rights to due process." The State counters that the missing testimony is not essential to the defendant's ability to brief his arguments; consequently, he cannot satisfy his burden of showing that he was prejudiced by the omission. We first address the defendant's due process claim under the State Constitution, *Ball*, 124 N.H. at 231, citing federal opinions for guidance only, *id.* at 232-33.

Edward Barbieri, Ph.D, a forensic toxicologist and assistant laboratory director at NMS Labs, provided approximately thirty-four minutes of expert testimony on direct examination for the State. The first seven minutes of Dr. Barbieri's cross-examination, however, were not recorded. The only recorded question by defense counsel on cross-examination was:

> [A]nd this is the question, Doctor. I mean, you can't say to any medical degree of certainty, if it was just the heroin that [Fosher would] be dead, right?

Dr. Barbieri responded, "That's right. I cannot say that."

Subsequent to our acceptance of the defendant's appeal, we were notified that a portion of the proceedings in this matter was not recorded. Following receipt of brief memoranda from the parties, we remanded the case to the trial court for the limited purpose of reconstructing the record to the extent possible. The defendant moved for the trial court to

> adopt the following facts as part of the record[:]
>
> A. Dr. Barbieri testified that the level of heroin alone was not the cause of death.
>
> B. That he agreed that both alcohol and heroin was the cause of death. That it was not one or the other.

The State's objection included paragraph thirteen, which read:

> What Dr. Barbieri did agree on was that he could not say with any medical degree of certainty, if it was just heroin, that he'd (Fosher) be dead. . . . This statement alone covers the points that the defense is trying to cover in its two statements but eliminates the certainty that they attribute to Dr. Barbieri. A certainty that the doctor never testified to.

The trial court determined that it was not possible to reconstruct the missing seven minutes of Dr. Barbieri's cross-examination. Further, it denied defendant's motion, "as the request does not comport with the Court's recollection of the testimony," and it noted that paragraph thirteen of the State's objection "more accurately reflects the overall testimony of Dr. Barbieri."

■ In *State v. Jenot,* the defendant argued that, because he obtained new appellate counsel, the loss of the transcript from the first day of trial required reversal, in accordance with a minority view among federal circuits. *State v. Jenot,* 158 N.H. 181, 183 (2008). Finding the reasoning of the First Circuit Court of Appeals in *United States v. Smith,* 292 F.3d 90, 98 (1st Cir. 2002), to be persuasive, we agreed with the State and the majority rule among the federal circuits that, in order to obtain a new trial, a "defendant must show specific prejudice to his appeal resulting from the incompleteness of the record." *Jenot,* 158 N.H. at 183; *see Smith,* 292 F.3d at 97. In *Smith,* the First Circuit noted that "due process does not require a full verbatim trial transcript, but only requires that a criminal appellant be provided with a record of sufficient completeness to permit proper consideration of his claims." *Smith,* 292 F.3d at 97 n.6 (quotation omitted).

The State contends that, during trial, both parties characterized the content of Dr. Barbieri's non-recorded testimony, thus providing this court with sufficient guidance to glean that content from the existing transcript. The State first points to the close of all the evidence, when the defendant unsuccessfully moved to dismiss the charges against him. There, the defendant characterized Dr. Barbieri's testimony as being consistent with the evidence that Fosher's death was the result of heroin and alcohol. The defendant also characterized Dr. Barbieri as agreeing, when questioned more than once, that he could not say to any degree of medical certainty that but for the alcohol, Fosher would have died.

Even if we were to assume that the defendant's contention regarding Dr. Barbieri's testimony is correct, however, we have already found that there was sufficient evidence to support the verdict. Consequently, we cannot say that the defendant has shown specific prejudice to his appeal resulting from the absence of a complete record of Dr. Barbieri's cross-examination testimony.

Finally, we note the defendant's argument that the absence of Dr. Barbieri's testimony requires that this court vacate both of his convictions, "[g]iven the relevance of such testimony to [his] appeal." At no time, however, has the defendant demonstrated, or even argued, how Dr. Barbieri's missing cross-examination testimony has any relevance to his conviction for receiving stolen property. *See, e.g., Dodds,* 159 N.H. at 248 (issues raised but not briefed are deemed waived).

■ In sum, we conclude that the defendant was not denied due process under the State Constitution, as he has not carried his burden of showing specific prejudice to his appeal resulting from the incompleteness of the record. As the State Constitution provides at least as much protection as

the Federal Constitution under these circumstances, *see Jenot*, 158 N.H. at 183-84; *Smith*, 292 F.3d at 97, we reach the same result under the Federal Constitution.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.